THE ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY v. MARY STEWART.

1. INJURY TO PASSENGER—*Attorney's Fee—Error.* In an action for personal injuries an allowance for attorney's fees, apart from and in addition to an allowance for exemplary damages, is erroneous.

2. EXEMPLARY DAMAGES, *When not Allowed.* Where a passenger is injured in endeavoring to alight from a train, through the negligence of the railroad company, but where there is nothing in the conduct of the employees in charge of the train to indicate malice or oppression, or any wanton, willful or deliberate disregard of the rights of the injured passenger, no exemplary damages can be allowed.

3. ACTUAL DAMAGES—*Testimony Sustains.* The testimony in the case examined, and *held* to be sufficient to sustain the award made for actual damages, but insufficient to justify an award for exemplary damages or attorney's fees.

*Error from Butler District Court.*

ON November 16, 1890, *Mary Stewart* was a passenger on a train of the *Atchison, Topeka & Santa Fe Rail-*

*road Company*, en route from Augusta to Douglass, in Butler county. On her arrival at Douglass, and while she was attempting to alight, the train was started and she was thrown to the ground between the depot platform and the wheels of the cars, resulting in her personal injury. She brought this action against the company, alleging that the injury was due to the negligence of the company in failing to stop the train a sufficient length of time for her to alight and leave the train. She avers that by reason of this negligence she was thrown with great force and violence to the ground, receiving severe internal injuries which are of a lasting and permanent nature, and which have rendered her incapable of earning her livelihood ; she therefore asks damages in the sum of $10,000. The defendant company denied the charge of negligence, and alleged that the injury sustained by the plaintiff was the result of her own want of care in holding on to the guard-rail of the train for a long period of time (nearly two minutes) after she had alighted from the same, by which means she fell down, or was thrown down, causing the injuries complained of. A trial was had with a jury, and the following special findings of fact were made and returned :

"1. Where and when did the accident alleged in the plaintiff's petition happen? Ans. Douglass, November 16, 1890.

"2. Was the train in motion when the plaintiff got off? A. She was thrown off.

"3. Did the accident occur to the plaintiff as she was alighting from the train? A. No.

"4. Did the plaintiff get off of the train on to the platform before any accident occurred? A. No.

"5. Was the plaintiff holding on to the railing on the side of the car after she had alighted from the train? A. No.

"6. Is it not a fact that the train stopped and the

plaintiff got off the train on to the platform without any accident happening to her? A. No.

" 7. Did not the plaintiff, after she got off the train on to the platform, turn her back toward the way the train was going and hold on to the iron railing on the side of the car after she had safely got off the train? A. No.

" 8. Would the accident have happened to the plaintiff had she not have held on to the iron railing on the side of the car after she had got off the train on to the platform? A. Never got off."

" 10. Did not the brakeman use all reasonable means to prevent the injury to the plaintiff? A. No.

" 10½. Should you answer the above question in the negative, state wherein they failed. A. Brakeman indifferent, not assisting plaintiff, and conductor starting train too soon.

" 11. Did not the plaintiff after the accident walk away without any assistance? A. No.

" 12. When was it that the plaintiff was first examined or treated by any physician? A. About the 19th of November, 1890.

" 13. What business was the plaintiff engaged in at the time of the accident, and what were her duties in connection with the show business? A. Show business and doorkeeper of the same.

" 14. Did the injuries of the plaintiff interfere with or prevent the plaintiff from carrying on her business? A. Yes.

" 15. Did not the plaintiff continue right along with the troupe that she was with, after the accident until the troupe disbanded at the city of Yates Center, over a week after the said accident? A. Yes.

" 16. Did not the plaintiff come to El Dorado on Tuesday following the Sunday after the accident? A. No.

" 17. Did she not while at El Dorado walk without any assistance? A. No.

" 18. Where did the plaintiff go from El Dorado? A. Yates Center.

" 19. Did not the plaintiff perform her part in the

show she was with at Yates Center, Kas.?   A.  Probably as collector part of the time.

"20.  How long was this after the accident?   A. About two weeks.

"21.  Did not the plaintiff get about the streets of Yates Center while she was there as well as a woman of her age usually does?   A.  We think not.

"22.  How long did the plaintiff remain at Yates Center?   A.  About two weeks.

"23.  Where did the plaintiff go from Yates Center? A.  Iola.

"24.  Where did the plaintiff go from Iola?   A. Kansas City.

"25.  Was not the accident caused by the act of the plaintiff in holding on to the iron railing on the side of the car after she had alighted from the train?   A. No.

"26.  Did the accident which caused the alleged injury happen by reason of the plaintiff's attempting to get off of the train while the same was in motion? A.  No; thrown off while in motion.

"27.  Did the train stop and start from the station before the plaintiff got off the train?   A.  Yes.

"28.  Did the plaintiff get off the train after the same had started from the station and while it was in motion?   A.  No; thrown off.

"29.  Did not the brakeman request the plaintiff to let go the iron railing after she had alighted and was standing upon the platform prior to the time of the accident?   A.  No.

"30.  Did not the conductor stop the train as speedily as he could, at the time of the accident?   A.  Yes.

"31.  Did not the brakeman catch hold of the plaintiff and prevent her from being run over by the cars? A.  No."

"34.  How much do you allow for attorney's fees in this case?   A.  One hundred and fifty dollars.

"35.  How much do you allow as exemplary or punitive damages?   A.  Five hundred dollars."

"37.  How much do you allow as damages for the injuries sustained by the plaintiff?   A.  Two thousand dollars."

"39. Is not the plaintiff a colored woman over 50 years old? A. Yes; colored. Do not know her age.

"40. Was she not a married woman at the breaking out of the late civil war, and the mother of 11 children at that time? A. We do not know.

"41. What was the amount of the ordinary compensation the plaintiff was able to earn per day before the accident? A. We do n't 'know.''

The general verdict awarded the plaintiff the sum of $2,650, which was made up of the following items: For damages sustained, $2,000; for punitive damages, $500; for attorney's fees, $150. Motions were made to require the jury to answer questions which they had failed to answer and for a new trial, which were overruled and judgment awarded in accordance with the verdict of the jury. *The Railroad Company* alleges error.

*A. A. Hurd*, and *Redden & Schumacher*, for plaintiff in error.

*Gardner & Kramer*, for defendant in error.

The opinion of the court was delivered by

.JOHNSTON, J.: It is contended that the amount awarded by the jury is not warranted by the testimony, and that it is so excessive as to betray passion and prejudice on the part of the jury. That Mary Stewart fell while leaving the train, and that it resulted in some injury to her must be conceded, but the cause of the accident and the extent of the injury are matters of dispute. Her theory is that the train did not stop at the station of Douglass a sufficient time to allow the passengers to alight from the cars, and that the train started while she was on the lower step of the car, attempting to step to the depot platform, and that she was thereby thrown between the cars

and the platform.   On the part of the railroad com-
pany it is claimed that the train was stopped the usual
length of time, and that Mary Stewart had alighted
from the train, but was holding to the railing of one
of the cars when the train started, and she was there-
by, through her own fault, jerked down and injured.

A reading of the testimony satisfies us that it is
sufficient to sustain the finding of the jury that the
company was negligent in starting the train while
she was endeavoring to alight, and also sufficent to
sustain the award of actual damages.  · The amount
of the award is quite large, but the testimony offered
in behalf of the plaintiff below tends to show that the
injury occasioned by the fall was severe, that it re-
sulted in blood passing from her and in sinking spells,
and that she has suffered pain ever since the time of
the injury, and was unable by reason of her suffering
to perform labor or obtain rest and sleep.   Consider-
able testimony was produced in behalf of the company
to the effect that she was not interrupted in her regu-
lar employment, and that she did not thereafter show
evidences of pain or suffering.   The conflict, however,
has been determined by the jury, and we are unable
to say that the sum of $2,000 allowed by the jury is
so excessive as to require a reversal.

The items of $500 as exemplary damages and $150
as attorney's fees which were awarded by the jury
cannot be allowed to stand.   The allowance of an at-
torney's fee, in addition to one for exemplary dam-
ages, is conceded to be erroneous, and we find nothing
in the testimony which justifies an award in any
amount as exemplary damages.   Nothing in the con-
duct of the employees in charge of the train indicates
malice or oppression, or any wanton, willful and de-
liberate disregard of the rights of the plaintiff below.

As she was not entitled to exemplary damages, no instruction upon that question should have been given, and the award made by the jury beyond actual damages should have been stricken out.

We do not regard the rulings upon the testimony to have been prejudicial, nor do we deem the objections raised upon the special questions to be material. The jury, in answer to questions concerning the age of the plaintiff and the compensation she was able to earn, stated "We do n't know." The testimony upon these questions was somewhat confused and uncertain, and hence the jury may not have felt able to give satisfactory answers. We do not think, however, that the questions are very material, nor that any error was committed by the refusal to compel the jury to answer them. We find no other matters in the record which require discussion.

The cause will be remanded, with directions to the district court to disallow and strike out the items for exemplary damages and attorney's fees, and when the judgment is so modified it will stand affirmed. The costs of this court will be divided between the parties.

All the Justices concurring