E. F. EVANS, *Appellee,* v. THE CENTRAL LIFE IN-
SURANCE COMPANY, *Appellant.*

No. 17,729.

SYLLABUS BY THE COURT.

1. INSURANCE — *Application* — *Misrepresentations of Soliciting
   Agent.* One who signs an application for life insurance with-
   out reading it, upon the assurance of the soliciting agent
   that it conforms to representations orally made, and that
   such signing is customary but not necessary, may refuse to
   accept a policy tendered him, on the ground that it does not
   meet such representations, notwithstanding the application
   contains a provision that no statement made by the solicitor
   would affect the rights of the company unless embodied in the
   written application.

2. ——— *Premium Note—Recovery.* Where such applicant has
   been compelled to pay to an innocent holder a negotiable pre-
   mium note given at the time of such application, he may re-
   cover from the company the amount so paid.

3. ATTORNEY'S FEE—*Not Recoverable.* In the absence of a stat-
   ute allowing it, a successful plaintiff is not entitled to recover
   his attorney's fee, even in an action for damages on account
   of the defendant's fraud or malicious misconduct.

4. ——— *Same.* A judgment purporting to be for the recovery
   of the plaintiff's attorney's fee can not be upheld on the
   theory that it was allowed as punitive damages, where the
   record shows that no issue as to the allowance of punitive
   damages was presented or determined.

Appeal from Harvey district court. Opinion filed
July 6, 1912. Modified.

*J. C. Nicholson,* of Newton, *A. M. Keene,* and *E. C.
Gates,* both of Fort Scott, for the appellant.

*Ezra Branine,* and *Harry W. Hart,* both of Newton,
for the appellee.

The opinion of the court was delivered by

MASON, J.:    E. F. Evans was induced by soliciting
agents of the Central Life Insurance Company to apply
for insurance upon his life.   He gave a negotiable note

41—87 KAN.

for $176 for the first premium, and signed a written application, which was forwarded to the company's main office. A policy was sent to him, but he refused to accept it on the ground that it did not conform to oral representations that had been made to him by the agents concerning the cost and the benefits of the policy he was to receive. The representations included a statement of the amount by which the premium would be reduced each year by a distribution of surplus; the policy contained no guaranty of this amount. He paid $100 in satisfaction of the note, which had been negotiated, and sued the company for the amount. He recovered judgment and the defendant appeals.

The principal contention of the defendant is that, even assuming the correctness of the plaintiff's version of the transaction, no recovery should have been allowed, because the agents had no authority to make the representations referred to, and the plaintiff had notice of such want of authority. The basis of this contention is a provision of the application (which did not embody the representations) reading as follows:

"No statements, promises or information made or given by, or to the person soliciting or taking this application for a policy, or by or to any person, shall be binding on the company or in any manner affect its rights, unless such statements, promises or information be reduced to writing in this application and presented to the officers of the Company at the Executive Office."

According to the plaintiff's testimony, at his first meeting with the agents he agreed orally to take a policy, and gave them his note for the first premium. Later one of them returned and asked him to sign the written application, saying, however, that while this was customary it did not make any particular difference whether he signed it or not. He answered that he was too busy to talk about it at that time. The agent then said he wished to send off the application at once, and the plaintiff signed without reading it, saying that

he would take it for granted that what the agent said was true. The application gave no specific information as to the terms of the insurance except that it was to be on the twenty payment life plan, for $5000 (in two policies), the premium to be $176.50, payable annually, the apportionment of surplus or profits to the policy-holder to be regulated by such principle as the company should adopt.

Under the plaintiff's evidence he was not bound to accept the policy tendered him. Whatever may have been the restrictions upon the authority of the agents, they represented the company in the matter of soliciting and procuring the application, and the company was chargeable with all that they knew as to how it was obtained. (*Pfiester v. Insurance Co.*, 85 Kan. 97, 116 Pac. 245.) The company could not repudiate the act of the agents as unauthorized and retain its fruits. (*Wagon Co. v. Wilson*, 79 Kan. 633, 101 Pac. 4.) This action is not one to compel the insurance company to issue a policy of the kind described by the agents, but in effect one to relieve the plaintiff from the obligation to accept the policy tendered him on the ground that its character had been misrepresented—that it was not the kind of policy he had agreed to take. In *Blanks v. Moore*, 139 Ala. 624, 36 South. 783, a similar provision in the written application was held to preclude the applicant from rejecting the policy on the ground that it did not conform to the oral representations of the soliciting agent. No claim was there made, however, that the application was signed without a full knowledge and understanding of its contents, and the court held the rule to apply which forbids the variation of a written contract by parol evidence. Assuming that in the present case the application was sufficiently definite to constitute a complete offer to accept and pay for a particular kind of policy, the evidence warranted a finding that the plaintiff, through justifiable reliance upon the assurances of the company's agents,

was ignorant of its contents. In that situation the controlling principles are those applied to a similar state of facts in the opinions from which the following extracts are made:

"It is contended that the fraud of Mouser [the agent], if sufficiently alleged, does yet not attach to the defendant [the insurance company]; this is asserted on the strength of the provision of the application that statements and promises of the solicitor shall not affect the rights of the company unless reduced to writing and presented in the application. We do not understand that this provision operates to confer upon the company the right to retain money received in consequence of fraud practiced by its agent—after it has knowledge of the fraud. How could it retain money under such circumstances without becoming party to the fraud? Upon the case stated there was never a free consent to the apparent contract; the agent practiced fraud on both the insurer and insured, and justice requires that the contract be held voidable at the instance of either party—if injured thereby. And such we conceive to be the law deducible from the decisions of this court as well as others." (*McKay v. New York Life Ins. Co.*, 124 Cal. 270, 273, 56 Pac. 1112.)

"The provision of the application that the company should not be affected by statements or promises made by or to the agent unless the same were reduced to writing and presented in the application can be of no avail to defendant on the facts which the evidence for the plaintiff tended to show. For present purposes it is sufficient to say of such provision that plaintiff had no knowledge of it and did not assent to it; although such knowledge might be imputed to him if his signature to the application had been honestly obtained, yet since the instrument as completed by the agent was fraudulent as to plaintiff, it must follow that defendant can derive no advantage from any stipulation thus fraudulently procured." (*LaMarche v. New York Life Ins. Co.*, 126 Cal. 498, 502, 58 Pac. 1053.)

"It was stipulated in the application, which was made part of the policy, that 'no statements, promises, or information made or given by or to the person soliciting or taking this application for a policy, or by or to

any other person, shall be binding on the company, or in any manner affect its rights, unless such statements, promises or information be reduced to writing, and presented to the officers of the company at the home office, in this application.' Counsel's contention is that this clause is applicable to this case, and hence the false representations of Wood, even if made, are wholly irrelevant and immaterial; and he cites in support of this proposition, *New York Life Ins. Co. v. Fletcher,* 117 U. S. 519, 6 Sup. Ct. 837. The learned counsel has, however, failed to observe that that was an action upon the contract, to recover upon the policy, and that in its opinion the court expressly recognizes that the fraud of the agent who obtained the application would have been a good ground for rescission by cancelling the policy and returning the premiums." (*McCarty v. New York Life Ins. Co.,* 74 Minn. 530, 534, 77 N. W. 426.)

In testifying concerning one of the representations made to him the plaintiff said: "I did n't believe it— it was too good to be true." The defendant urges that this is fatal to a recovery because it shows that the plaintiff did not in fact rely upon the representation, and could not have been misled by it. The plaintiff may have doubted whether the company would insure him on as favorable terms as the agents represented, but he was not on that account required to accept insurance on whatever terms the company saw fit to offer.

Testimony concerning the statements of the soliciting agents was objected to as an attempt to prove their authority by their own declarations. Most of it was competent upon the theory already indicated, and the rest was not prejudicial. The contention is made that the plaintiff had the benefit of the policy issued by the company. He returned it very soon after its receipt. It was sent to him again, and he again returned it with a letter stating that under no circumstances would he accept it. Later he asked the company to return him the policy, but this was nearly two years after its

issuance, at the time when it had on any theory ceased to be effective.

In addition to the amount paid by the plaintiff in settlement of the note, the court gave him judgment for fifty dollars for his attorney's fee in the present action. In some jurisdictions the recovery of an attorney's fee is allowed as an element of damages resulting from fraud or malicious misconduct. (13 Cyc. 79; 20 Cyc. 142.) In *Winstead, Sheriff, v. Hulme,* 32 Kan. 568, 4 Pac. 994, it was said that in a replevin action attorney's fees can not be recovered when the elements of malice or oppression do not mingle in the controversy. The language used might seem to imply that if these elements were present such a recovery might be had. It is evident from the entire opinion, however, that what the court had in mind was that under such circumstances punitive damages might be recovered, and in that case the amount necessarily expended by the prevailing party in the litigation might be considered in fixing the amount. It has been said that this may be done without evidence of such amount, (*Titus v. Corkins,* 21 Kan. 722), and that the reception of evidence thereof is not error (*Duff v. Read,* 74 Kan. 730, 735, 88 Pac. 263). In *A. T. & S. F. Rld. Co. v. Stewart,* 55 Kan. 667, 672, 41 Pac. 961, the allowance of an attorney's fee in addition to exemplary damages was conceded to be erroneous. Attorney's fees in the case in which the judgment is rendered have never been allowed as such in this state, except where specifically authorized by statute, or by agreement, and we think it must be said that the law does not allow their recovery, even in actions for damages resulting from fraud and malicious misconduct. In some states exemplary damages are treated as in part compensatory, and a recovery of the amount expended in the litigation is allowed as an item thereof. (See cases cited in notes in 8 Am. St. Rep. 158; 4 L. R. A., n. s., 907; and 28 L. R. A., n. s., 761.) In this state exemplary dam-

ages are not regarded as compensatory in any degree, but are awarded solely as punishment. (*Machinery Co. v. Smith*, ante, p. 331, —— Pac. ——.) The amount of damages that should be allowed as punishment in a given case can not be determined by any fixed rule. The fact that the offender's misconduct has caused the injured party to incur the expense of litigation—an expense for which (except as to items taxable as costs) he can not claim compensation—is merely one of the matters that may be considered in fixing it.

It is argued that the judgment for the additional fifty dollars in this case may be upheld as an award of punitive damages. The petition did not claim punitive damages, but did ask a recovery of attorney's fees as such, and the journal entry so characterized the amount allowed. No issue as to the allowance of punitive damages seems to have been presented or decided. The judgment will therefore be modified by the deduction of the amount allowed as an attorney's fee.

The judgment is affirmed, with the modification indicated.