No. 23,731.

J. D. ZIMMERMAN, Assignee of THE FARMERS & GROWERS SHIPPING ASSOCIATION, *Appellant and Appellee,* v. A. L. McMURPHY et al., *Appellees and Appellants.*

### SYLLABUS BY THE COURT.

1. INSOLVENT CORPORATION—*Actions Against Corporate Officers for Mismanagement—No Interest on Damages Before Judgment.* In an action by an assignee of an insolvent corporation to recover from executive officers of the corporation losses and damages resulting from their mismanagement and illegal acts, interest on the damages is not recoverable before judgment.

2. SAME—*Improper Charges Against Offending Officers.* Nor are the offending officers, under the circumstances of the case, chargeable with the expenses of the administration of the assignment.

3. SAME—*Evidence—Knowledge by Officials of Mismanagement of Business.* The evidence examined and held to be sufficient to uphold the finding that the defendants had knowledge of the mismanagement and wrongs through which the losses and damages resulted, and to sustain the judgment that was rendered.

4. SAME—*Faithfulness of Assignee Not an Issue in This Action.* Whether or not the assignee faithfully administered his trust and collected all recoverable demands due to the estate was not open to consideration and determination in the present action.

Appeal from Rice district court; DANIEL A. BANTA, judge. Opinion filed July 8, 1922. Affirmed.

*Frank L. Martin,* of Hutchinson, for the appellant and appellee.

*Sam Jones, Ben Jones,* both of Lyons, and *F. Dumont Smith,* of Hutchinson, for the appellees and appellants.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by the assignee of the Farmers & Growers Shipping Association to establish a liability against the officers and agents of the association for mismanagement, negligence and tortious acts by which the association suffered loss and its creditors were defeated in the collection of their claims. Plaintiff recovered damages, and defendants appeal.

The association was organized in 1914 with an authorized capital of $10,000, but only $3,125 of the capital was paid in, and on this amount the association began business. On account of losses sustained in handling grain the association became insolvent about April 1, 1916, but its business was continued until an assignment was made on April 14, 1917. Plaintiff alleged that McMurphy and White, as president and secretary, and Forewalder, as manager, knew of the insolvency of the association in April, 1916, but that instead of winding up the business and settling with creditors as was their duty they continued the business, assuming obligations for grain deposited and sold, assuring those who dealt with them that the association was in good condition.

It is further alleged that in 1916 the association began dealing in futures and options, and that this was done by the manager with the consent of the president and secretary of the association. The general manager transacted most of the business and few meetings were held of either directors or stockholders. During the time that the gambling transactions were going on, it is alleged that the defendants gave out information to the effect that the association was solvent and in good financial condition. At the trial a large number of questions were submitted to the jury which was called to serve in an advisory capacity. The court also made separate findings of fact in addition to those returned by the jury. The court found that large losses were sustained through the negligent mismanagement as well as the gambling transactions of the defendants. It was found that the assets received by the assignee amounted to $10,478.89, while the indebtedness of the association was $13,215.50. One of the claims was postponed because it was that of a director of the association which it was held should not be paid until all other bills were paid. Under a computation made of the assets and liabilities arising from the wrongs of the defendants, they were held liable to the extent of $714.41, which amount it was held should bear interest from

the date of judgment. In his appeal the plaintiff makes two specifications of error. One is the refusal of the court to add interest to the amount for which the defendants were found liable from the date of the assignment instead of from date of judgment.

As to the interest, the controversy was between the association or the assignee of the association and its officers charged with mismanagement and misfeasance. The damages sustained by reason of their wrongs were unliquidated and could not be ascertained by any fixed standard of computation. The damages could only be determined by a long examination and accounting of the many transactions involved and were not ascertained until the findings and judgment of the court were made and entered. The general rule is that interest is not recoverable on awards for unliquidated damages before judgment. (*Evans v. Moseley,* 84 Kan. 322, 114 Pac. 374; *Lower v. Shorthill,* 103 Kan. 904, 176 Pac. 647.) No error was committed in disallowing interest before the rendition of judgment.

The other specification of error is that in ascertaining the liability or amount of damages to be assessed against the defendants the costs of the assignment administration which had accrued and would accrue should have been made a charge against the defendants and their liability fixed by deducting the same from the assets of the association. The expenses of settling the insolvent estate is not a proper element of damages. While their wrongful action contributed to losses sustained by the association, the administration of the trust involved demands, actions, fees and expenses other than the claims against defendants.

The liability against the defendants had accrued before the assignment was made. Steps for establishing it were taken in the assignment proceeding. Nothing in the statute providing for assignments authorizes the taxing of the expenses of administering the trust against those found to be indebted or liable to the insolvent assignor. While asserting a liability of the defendants for these expenses, plaintiff cites no authority, and in fact advances no argument in support of the claim. The costs and expenses of the assignment are somewhat akin to those incurred in ordinary litigation, and as to the latter, all know that there are many expenses attending litigation, such as loss of time and expense of the litigant attending court as well as his attorneys' fees, which may not be taxed against the losing party. As to costs they even were not recoverable at common law, but of course each party was responsible for the costs he made.

They are provided for by statute, and attorneys' fees incident to a litigation are in a few instances authorized to be assessed, but unless such expenses are a matter of contract or there is express statutory authority for assessing them, they are not recoverable. (*Swartzel, and others, v. Rogers*, 3 Kan. 374; *Stover v. Johnnycake*, 9 Kan. 367.) In the case last cited it was said: "And probably such a judgment (for attorney fees) is never rendered in an action of tort" (p. 371), citing cases. (See, also, *Evans v. Insurance Co.*, 87 Kan. 641, 125 Pac. 86.) It has been further held that the fees of a guardian *ad litem* in executing his trusts are not to be treated as costs in the case, and not chargeable against the unsuccessful party. (*Black v. Black*, 64 Kan. 689, 68 Pac. 662; *Warner v. Warner*, 83 Kan. 548, 112 Pac. 97.) Aside from the lack of statutory authority, the expenses of the assignee in administering the trust are not the sole and direct results of the torts of the defendants. If the assignment had been made in April, 1916, when the defendants first discovered that the indebtedness of the association exceeded its assets, it would hardly have been claimed that the defendants would have been liable to the association for existing losses or for the expenses of the assignment proceedings. They would not have been held responsible for losses resulting from slumps in the market price of grain which had been previously purchased in good faith nor for mistakes innocently made in carrying on the business. Transactions occurring in that period were involved in the assignment. The administration of the trust necessarily involved the discovery and collection of assets, the management and disposal of property held by the association, the adjustment of the claims of creditors, the enforcement of credits and demands against parties owing or liable to the insolvent association, including that against defendants, and also the closing of the estate and the distribution of the proceeds. Many duties devolved on the assignee and many expenses were incurred by him in the administration of the trust which were outside of those pertaining to the claim against defendants. The legitimate expenses of administration are of course chargeable against the funds of the estate, but we think the court correctly held that they did not constitute a liability legally enforceable against the defendants.

In their cross appeal defendants insist that the finding of the court that McMurphy and White were guilty of negligence because of the wrongs of their manager, Forewalder, was not warranted, and

that the conclusion of the court that they had such knowledge of the gambling transactions carried on by the association as made them liable for losses resulting from those transactions was not supported by the evidence. They also insist that it was the duty of the assignee to have collected from the Kemper Grain Company for two cars of wheat shipped to that company and which was appropriated by it in payment of the gambling debts contracted by the manager, and which if collected would have amounted to about $3,000, and canceled liabilities to that extent. Apart from carrying on the business when the defendants knew the association was insolvent, and the giving of assurance to those depositing grain in the elevator that the association was in sound condition, it appears that the association engaged in gambling transactions which resulted in loss and contributed to insolvency. The speculation in margins began in May, 1916, and while some profits were made through these transactions with the Kemper Grain Company, in the long run the association became indebted to that company on May 17, 1917, to the amount of $7,021.19, and it was found that the greater part of this was due from commissions upon option contracts or speculating engagements upon the board of trade.

It is contended that there is no evidence that McMurphy and White had knowledge of the unlawful acts of the manager and therefore they should not be held liable for the losses resulting from the dealing in margins. These deals were carried on in the name of the association and were entered on the books of the association. The books were open to the inspection of the defendants and were brought before the officers at the meeting of the directors. The correspondence between the Kemper Grain Company, through whom the gambling transactions were had, disclosed the dealings in futures. After losses had occurred Forewalder told McMurphy that he had a plan to make up losses. At one time a telegram relating to an option was handed to White for delivery to Forewalder. The evidence on the subject while somewhat meager is sufficient we think to justify the court's finding that—

"While Forewalder was never expressly authorized to engage in gambling transactions on the board of trade in the name of the association, McMurphy as president and White, as secretary, knew that he was so engaged. Forewalder began his speculations in margins early in 1916 if not before and such circumstances and transactions were so frequent that notice thereof could not very well have escaped the attention of the president and secretary."

The contention is that in the computation of losses defendants should not have been charged with the full amount of the same, but that credit should have been given for two cars of wheat which were shipped to the Kemper Grain Company without directions and which were applied by that company to the indebtedness of the association to that company, most of which arose in option transactions. It is said that these debts were illegal and that the assignee could, with proper diligence, have recovered the value of these two cars of wheat, $2,966.33, as that company did not become insolvent until July, 1918. Whether or not the assignee faithfully performed his trust in this respect or has collected all available credits cannot be adjudicated in this action. It appears that his action regarding this claim was taken upon the advice of counsel and in good faith. That company was made a party in this action, but it was insolvent and the corporation had been dissolved. It is true that defendants could not be held liable unless the association was damaged by the mismanagement and wrongs of the defendants. The court found the net assets of the association and set up against that amount the liabilities caused by the wrongs of the defendants, and for the difference between these amounts the defendants were adjudged to be liable. If the assignee has failed to perform his duties faithfully in the collection of claims or to account for assets that were available, he may be proceeded against upon his bond, but these matters are not open to consideration and determination in the present action.

Judgment affirmed.