139 A.2d 838 (1958)
Joseph T. SINGEWALD, Jr., Carl Singewald, H. Elmer Singewald, Quentin D. Singewald and Joseph T. Singewald, Jr., Carl Singewald, H. Elmer Singewald, Quentin D. Singewald, Trustees under the Will of Joseph T. Singewald and Carl Singewald, executor under the will of Joseph T. Singewald, and The State of Delaware, Plaintiffs,
v.
Rhoda B. GIRDEN, Defendant.
Court of Chancery of Delaware, Sussex.
March 7, 1958.
W. Howard Thompson, Georgetown, for plaintiffs, other than the State.
Daniel J. Layton, Sr., Georgetown, Sp. Deputy Atty. Gen., for the State of Delaware.
Houston Wilson, Georgetown, for defendant.
SEITZ, Chancellor.
By this action plaintiffs, The State of Delaware and the owners of an abutting property, seek a mandatory injunction directing the defendant to remove a cottage which is located in the bed of a public street in a seashore development known as "Dewey Beach". In a prior opinion, Singewald v. Girden, Del.Ch., 127 A.2d 607, 616, this court determined that the street in question, McKinley Avenue, was duly dedicated and accepted on behalf of the public by action taken in 1915 and that title to the land in question had not been lost by adverse possession prior to that time.[1] The court reserved for trial the affirmative defenses of abandonment, equitable estoppel and laches as well as the question as to whether the individual plaintiffs, as abutting owners, suffered special injury which entitled them to relief. This *839 is the decision after trial. The defendant has the burden of proof to sustain the three affirmative defenses.
I first consider the affirmative defense of abandonment. Defendant contends that the State abandoned that portion of the street claimed by her. As this court said in its prior opinion, "Generally speaking, an abandonment of a public road does not result from mere non-use after a dedication is complete, unless a statute so provides. Something affirmative must be shown. 11 McQuillin Municipal Corps., 3d Ed., § 33.78. However, abandonment is a question of fact, Reilly v. City of Racine, above [51 Wis. 526, 8 N.W. 417] * * *". The court also noted that a stronger showing had to be made against a public as opposed to a private party.
Has defendant here sustained her heavy burden of proving an abandonment by the State? I should note, as do counsel for plaintiffs, that if the public road was abandoned title to the fee would "revert" to the prior owner  also the State. Thus abandonment, if proved, would not help defendant unless defendant could also show adverse possession for twenty years after abandonment was established. Did she make such a showing?
First off, I am completely satisfied that the evidence does not support a finding of abandonment by the State Highway Department, certainly not from a time which would add up to the required 20 years. I shall not detail the evidence except to point out that the knowledge of defendant's predecessor in "title" as to the 1915 action by the Public Lands Commission, plus the location of the land involved, as well as lack of reasonable public need for its use, until recent years, did not justify defendant's predecessor in believing that the land upon which his cottage was located was abandoned as a public street.
Indeed, the evidence fails to persuade me that the State evidenced an intention during the pertinent period to abandon any portion of McKinley Avenue. The fact that other squatters were given rights by legislative or executive action only strengthens my conclusion as to lack of intent to abandon in this case. Nor did the statement by the State Highway Department in an answer to an interrogatory in this action constitute a binding admission of abandonment. It is equivocal at best. Since Berry (defendant's predecessor) died before this action was instituted, naturally, he did not rely on the so-called admission. Nor did defendant's construction of the Highway Department's answer constitute the position of the Highway Department at the trial.
Even if we assume an intent to abandon, I am satisfied that defendant's predecessor did not establish the requisite adverse possession. I say this because as hereinafter developed, I do not believe the possession of the defendant's predecessor was openly adverse for any relevant twenty year period.
I turn next to the affirmative defense that the State and the individual plaintiffs are equitably estopped to maintain this action. Certainly, there must be a very strong showing before an estoppel would apply against the State, since the State is presumably representing all of its citizens. What facts are relied upon by defendant to support this defense?
About 1900, one, John S. Lynch, took possession of certain land fronting on the ocean and erected a cottage thereon. In May 1914, he purported to sell the land and buildings to one, Annie S. Mahon for $350 and gave her as evidence a receipt in which the land was described as lots "occupied" by Mr. Singewald, Calvin B. Evans and others. In August of the same year, Mrs. Mahon purported to sell the property to her son, Charles B. Berry, and gave him a receipt in which the land was similarly described. No barrier was erected to protect the area from the overflow by ocean tides and it was often overflowed. The area was quite isolated, there being no road directly south from Rehoboth Beach, and the approach to it was certainly by a roundabout way.
*840 Since the Dewey Beach development was not plotted and sold at public sale by order of the Public Lands Commission until 1915, I think it serves no particular purpose to emphasize what happened prior to that time. I say this because, as heretofore decided, the State admittedly then owned the land which was plotted and sold and which is now called Dewey Beach, and of which the land claimed by defendant was a part. The lots were advertised extensively for public sale and the posters so advertising contained scaled reproductions of the plotted area. It is of importance to note that the posters showed the defendant's cottage at its then location at the easterly end but within the bed of McKinley Avenue.
A delegation of the persons who occupied a portion of the land ("squatters") which was to be sold appeared before the Commission and were advised by the Commission that none of such occupants would be removed from their existing premises until such time as objection to their occupancy would be made by some owner of land in the area to be sold. While it is true that the record does not show that defendant's predecessor in title appeared at the meeting, I think the only reasonable inference from the testimony is that the defendant's predecessor in title (Berry) was fully aware that the land he occupied was public land and that he was being permitted to continue his occupancy on the terms stated by the Commission.
About 1919, Berry moved his cottage 146.4 feet westward on McKinley Avenue to the point where it is now located. He did this to protect it from the effects of ocean storms. At that time there were only a few cottages in the area and the land shown on the plot as constituting the roads of Dewey Beach was not developed at all. The whole area was largely inaccessible except on foot. Indeed, it was not until 1927-28 that Sussex County laid out a road from Silver Lake at Rehoboth Beach to the northern limits of Dewey Beach. And it was not until 1934, that the State Highway Department improved the road then known as King Charles Avenue (later Ocean Highway) through Dewey Beach southward to Indian River Inlet.
In 1928, Berry obtained from Lynch a so-called confirmatory deed by which Lynch purported to convey to Berry his right, title and interest to certain public lands, being the land now claimed by defendant. This deed was never reported to the Sussex Board of Assessment and the property was never assessed for taxation. In fact no taxes were paid on the lot until 1947, which was after Berry's death. The defendant is Berry's daughter and is devisee of the property under his will and thus stands in no better position than did Berry.
In the period between 1915 and 1930, as stated, Berry moved his cottage westward on McKinley Avenue, which was then not much more than a part of the sandy terrain which characterized the whole area. The moving, in my opinion, was clearly an attempt to resist damage from ocean storms. Certain other improvements were made to the structure after that time. However, I find that Berry made these improvements with full knowledge, dating back to the original knowledge obtained in connection with the public sale of the land, that he did not own the land on which the cottage was located; that in fact it was part of the bed of a dedicated public road and that his occupancy was with permission. These facts militate against an estoppel.
In 1930, plaintiff, Singewald, wrote to Berry stating, inter alia (see prior opinion), that when the beach was developed, "which will probably be within the next few years, it will be necessary for [him] to remove your cottage from the street bed." [127 A.2d 613.]
After 1930, Berry made certain additional improvements to the cottage, most of which were to the interior. But, once again, his daughter, through him, must be held to have had knowledge that the cottage was occupying a portion of a bed of a dedicated public *841 street and that the occupancy was based upon original permission.
The application of the doctrines of equitable estoppel presupposes that the party's claim is made in the utmost good faith. One who has knowledge of the facts cannot rely in good faith upon words or conduct of another which are inconsistent with the truth. See 19 Am.Jur., Estoppel, § 86, p. 739.
The occupancy by Berry from and after 1915 must be held to be with full knowledge that he did not own the land on which his cottage was located and that in fact it was part of a dedicated street. It is true that the State took no action to remove him and his successor for many years but I think this does not support any finding that Berry was misled into believing that the State had waived, surrendered or abandoned its rights. I say this because he was charged with notice that "the squatters" were permitted to stay until there was objection by someone purchasing land at the public sale. It is also a fact that Berry never paid a real estate tax. I take judicial notice that an owner realizes that taxes are assessed against his real estate. The so-called confirmatory deed to Berry in 1928 recited that the land was "public land". Certainly this was also a caveat of major proportions, particularly against the factual background of this case.
I should add that this whole area was not really developed to any great extent until after World War II. In fact the roads within the development were not paved until recently. The fact that the Highway Department did not improve these roads until recent years was based upon what I find to be the understandable premise that there was not a sufficient need to justify the expenditure. The reasons for not paving the streets of the development should have been and in my opinion were fully understood by defendant's predecessor, Berry.
I conclude that defendant has not sustained her defense of equitable estoppel.
I turn finally to the defense of laches. Actually my determinations under the equitable estoppel decision are dispositive of this defense. I refer particularly to the conclusion that Berry (defendant's predecessor) continued in possession from 1915 to 1947 with full knowledge (as I find) that his cottage was located on a public street and that he was permitted to stay at the sufferance of those purchasing lots at the 1915 public sale. Moreover, I believe the defendant's predecessor was not entitled under the circumstances to construe the State's inaction as amounting to an abandonment of that portion of the street. In any event, I do not believe the change of position of defendant's predecessor was of sufficient substance to outweigh the right of the public to have a substantial obstruction removed from a public street.
I conclude that the defendant has not sustained her defense of laches.
Since the State is entitled to the relief requested, it is not necessary to decide whether the individual plaintiffs have shown special injury of the type which would entitle them to the same relief. Thus, the question of possible error in the fixing of the northern boundary of Dewey Beach is academic at best.
I conclude that a mandatory injunction should issue compelling the defendant to remove the cottage from the bed of McKinley Avenue within a time to be fixed in the order. If the parties can agree on such time, the court will adopt it; otherwise it will be fixed by the court.
Present order on notice.
NOTES
[1] It was and is assumed that the land was not within the exceptions found in 7 Del.C. § 4502.