Hylton HARMAN, Trustee in Bankruptcy of Coffeyville Loan and Investment Company, Plaintiff-Appellant,

v.

D. A. WILLBERN, Defendant-Appellee.

No. 74–1332.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 24, 1975.

Decided Aug. 4, 1975.

**1334**

T. Richard Liebert, Coffeyville, Kan., and Thomas E. Joyce, Kansas City, Kan., for plaintiff-appellant.

Blake A. Williamson, Kansas City, Kan. (A. C. Cooke, Kansas City, Kan., and Paul A. Lamb, Coffeyville, Kan., on the brief), for defendant-appellee.

Before BREITENSTEIN, McWILLIAMS and DOYLE, Circuit Judges.

BREITENSTEIN, Circuit Judge.

In 1963 the trustee of a company seeking reorganization under Chapter X of the Bankruptcy Act sued defendant, a stockholder and director of the company, for alleged breaches of fiduciary duties. For a history of this controversy see *Harman v. Willbern,* Kan., 227 F.Supp. 892, and 374 F.Supp. 1149, and *Elbel v. United States,* 10 Cir., 364 F.2d 127, cert. denied 385 U.S. 1014, 87 S.Ct. 726, 17 L.Ed.2d 550. In 1974 the federal district court gave judgment for defendant. We now have the appeal of the trustee.

The facts found by the trial court, see 374 F.Supp. at 1151–1157, are not disputed. Coffeyville Loan and Investment Company, Inc., (CLIC) was organized as a Kansas corporation in 1937. It sold investment certificates and preferred stock to the public, made chattel loans, made and serviced real estate loans, sold insurance, and through a subsidiary operated five bottling plants. Defendant-appellee Willbern was the organizer, dominating stockholder, and chief executive of CLIC. At all pertinent times C. H. Carrington and Cale Oden were officers and directors of CLIC. Defendant was also president of First Federal Savings and Loan Association in Coffeyville.

In 1956 defendant listed CLIC for sale at $750,000. The company had lost some business and had been making recurring cash advances to the bottling company to cover operating losses. Defendant desired to be relieved of his responsibilities to CLIC and to devote his efforts to the savings and loan company. In 1957 defendant discussed the sale of CLIC with Donald R. Elbel, a prospective purchaser. They agreed upon a price of $720,000. At the time the value of CLIC approximated $900,000 and it had an annual net income of about $111,500.

The sale to Elbel's designee was consummated in January, 1958. Par value of CLIC's common voting stock was reduced from $360,000 to $60,000. Defendant received $420,000 in cash for the common stock. He and his associates were issued a new Class "C" preferred stock of CLIC valued at $300,000. The retirement of this Class "C" stock and of the $68,000 of Class "A" and "B" preferred CLIC stock held by defendant and his family was secured by a pledge of the CLIC stock in the bottling company. The actual transfer of control occurred on February 7, 1958.

Defendant remained on the CLIC board of directors until August 28, 1958. The Elbel companies looted CLIC of its marketable assets. On July 17, 1959, the CLIC petition for reorganization under Chapter X was approved. Defendant, his immediate family, and the family corporation, as a group were the largest unsecured creditors in the Chapter X proceedings and eventually lost $241,000.

■ The first question is whether defendant breached any fiduciary duty to the CLIC preferred stockholders and unsecured creditors by the sale of control. The right of a majority stockholder to dispose of his shares at any time and for any price to which he may agree is limited by the requirement that he may not do so "if the circumstances surrounding the proposed transfer would alert suspicion in a prudent man that the purchasers are an irresponsible group who will mismanage and loot the corporate assets." *McDaniel v. Painter,* 10 Cir.,

418 F.2d 545, 547, a case arising in Kansas and controlled by Kansas law.

After a careful review of the mass of material developed by both official and unofficial investigations during the pendency of the litigation, the court made detailed, comprehensive findings. It found that defendant checked Elbel's general business reputation with several named bankers; that the plaintiff "did not produce any competent evidence that the purchase price obtained by Mr. Willbern in return for the transfer of his control in CLIC was inflated"; and that there was no evidence that at any time defendant "was aware of the financial insecurity of Elbel or the Elbel controlled companies."

■ Nothing will be gained by repeating here the uncontested findings. Plaintiff relies on the principles announced in *Insuranshares Corporation of Delaware v. Northern Fiscal Corporation,* E.D.Pa., 35 F.Supp. 22, 25–26, and followed in such cases as *Swinney v. Keebler Company,* 4 Cir., 480 F.2d 573, 578, and *Estate of Hooper v. Government of the Virgin Islands,* 3 Cir., 427 F.2d 45, 47. The trial court analyzed these cases, recognized the principles stated therein, and held them inapplicable. We agree. The court held that "the plaintiff's evidence totally failed to establish circumstances surrounding the sale of defendant's interest in CLIC, *which existed at the time of the sale,* to put a prudent man on notice that the purchaser's intentions were anything but honorable." Plaintiff's claim of a breach of fiduciary duty by the sale of CLIC control is without merit and was properly dismissed.

■ Defendant remained on the CLIC board of directors after the transfer and until August 28, 1958. Plaintiff claims that he breached his trust by not preventing Elbel from looting CLIC. Before and after the transfer, the day-to-day operations of CLIC were in the hands of Vice President-Director Carrington and Secretary-Director Oden.

The looting consisted of the conversion, by various means, of CLIC's diversified portfolio into investments in Elbel enterprises. Defendant had no actual knowledge of the transactions used by Elbel to plunder CLIC. The court found that the challenged transactions "appeared normal and proper, at least on their face." No evidence shows that defendant as a director would, in the ordinary course of events, have seen any reports or statements which would have made the transactions suspect.

Plaintiff's complaint of lack of concern by defendant is without support. Defendant had a substantial financial stake in CLIC, as did Carrington and Oden with whom defendant "periodically" checked and in whom defendant had confidence because of their long association with CLIC. Defendant suffered, rather than profited, from Elbel's rapacity.

■ The trial court correctly held that the Kansas decision in *Noll v. Boyle,* 140 Kan. 252, 36 P.2d 330, 332, is controlling. The court there said:

"A director of a corporation is not charged with knowledge of what the officers in charge of the company are doing. To so hold would be to go far beyond any rule of liability that has been called to our attention."

Plaintiff has been given every opportunity to prove his case, and he has failed to do so. The law applicable to the admitted facts relieves defendant of any liability.

Affirmed.