No. 48,654

James G. Newton, *Appellee,* v. Hornblower, Inc., Hornblower, Ltd., Hanover House, Inc., E.H. Gubser and Edward I. Cohen, *Appellants.*

(582 P.2d 1136)

Opinion filed July 21, 1978.

*Milo M. Unruh,* of Arn, Mullins, Unruh, Kuhn & Wilson, of Wichita, argued the cause, and *Edward F. Arn,* of the same firm, was with him on the brief for appellants.

*Darrell D. Kellogg,* of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, argued the cause, and *Clark R. Nelson,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: This is an action brought individually and derivatively by James G. Newton, plaintiff-appellee, against Hornblower, Inc., a Kansas corporation, Hornblower, Ltd., a Kansas limited partnership, Hanover House, Inc., a Kansas corporation, E. H. Gubser and Edward I. Cohen. Judgments were entered in favor of plaintiff in varying amounts and in connection with varying claims totaling $133,331.03 actual damages, $100,000.00 punitive damages against Gubser, and $125,000.00 punitive damages against Cohen. In addition, attorneys fees and litigation expenses in the amount of $69,576.06 were allowed plaintiff against Cohen, Gubser, Hornblower, Inc. and Hornblower, Ltd. An additional judgment was rendered in favor of Newton, as Trustee for Velmer J. Gardner, in the amount of $4,030.80 actual damages, and punitive damages against Gubser in the amount of $3,067.00 and against Cohen in the amount of $3,833.00.

The parties are not in agreement as to the complicated factual situation, a recitation of which covers 19 pages of the appellants' brief and 22 pages of the appellee's brief. We will attempt to condense those facts considerably.

Hornblower, Inc. was organized in June of 1962 by Newton, Gubser and Cohen, each investing the sum of $400.00 in return for one-third of the corporate stock. The corporation was formed for the primary purpose of acting as the general partner of Hornblower, Ltd. in connection with the construction, ownership and operation of a Ramada Inn in Wichita, Kansas.

Hornblower, Ltd., a Kansas limited partnership, was organized in September, 1962, with Hornblower, Inc., the general partner, owning 60%, Newton, Gubser and Cohen, limited partners, each owning 13% and Gardner, a limited partner, with 1%. Gardner formerly had certain rights to a Ramada Inn franchise for the Sedgwick County area and in return for his release of those rights to Hornblower, Inc. and Hornblower, Ltd., he received a 1% interest in the limited partnership. Hornblower, Inc. obtained from Ramada Inns, Inc. of Phoenix, Arizona, an exclusive franchise for the construction, ownership and operation of Ramada Inns in Sedgwick County, Kansas. This franchise was subsequently assigned by Hornblower, Inc. to Hornblower, Ltd.

Ramada Inn East was constructed on leased ground at 8300 East Kellogg, Wichita, and opened for business in April of 1963. Hornblower, Inc. was the management entity for the motel and

Hornblower, Ltd. was the operating entity. Hornblower, Ltd. paid to Hornblower, Inc. a management fee of 5% of the gross income from Ramada Inn East. In addition, Hornblower, Inc., as the general partner of Hornblower, Ltd., received 60% of the profits of the partnership.

Cohen, Newton and Gubser were the original officers and directors of Hornblower, Inc. and each took an active part in the construction and operation of the motel through December, 1964. In December, 1964, Newton resigned as an officer of Hornblower, Inc. but retained his position as a director. From that time forward, Cohen and Gubser were the managing officers and directors of Hornblower, Inc. and handled the management and operation of the motel. Newton withdrew from any active participation in the management of the corporation or the limited partnership.

The original motel consisted of 110 rooms plus restaurant, banquet and recreational facilities. It has proved highly successful over the years and has been quite profitable to all three of the original principals.

Hanover House, Inc., a Kansas corporation, was organized in May, 1967, with its stockholders being Cohen and the immediate family of Gubser. The corporation was organized to operate the restaurant at the motel and to furnish and equip a 47-room addition to the motel.

Plaintiff brought this action for actual and punitive damages claiming that defendants Cohen and Gubser had systematically taken actions beneficial to themselves individually and detrimental to plaintiff, Hornblower, Inc. and Hornblower, Ltd. Specific claims include excessive management fees and salaries, misappropriation of corporate funds and assets, payment of expenses of Hanover House, Inc. by Hornblower, Inc. and Ltd., and, among others, misappropriation of business opportunities.

With the foregoing identification of the parties and limited factual background, we will proceed to the issues raised by appellants and develop additional facts as may be necessary to discuss the points involved.

Appellants designate some 18 different points in their record on appeal but have consolidated the principal ones in their briefs and arguments to 9.

## I.

Appellants' first point attacks the jurisdiction of the trial court due to certain alleged deficiencies in the pleadings and pretrial order. The contention is that the second amended petition, the last one filed, along with certain amendments allowed by the pretrial order, are insufficient to meet the requirements for a derivative action under K.S.A. 60-223a and therefore the court lacked jurisdiction.

K.S.A. 60-223a provides:

"**Derivative actions by shareholders.** In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the petition shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the state of Kansas which it would not otherwise have. The petition shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary under the applicable law, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort. The derivative action may be maintained only if the court is satisfied that the plaintiff will adequately represent the interest of the corporation or association. In the conduct of the action the court may make appropriate orders corresponding with those described in K.S.A. 60-223(d). The action may be dismissed or compromised only with the approval of the court upon notice to shareholders or members in such manner as the court may direct."

The final pleadings were accepted as filed in the pretrial order of August 22, 1975. When the case was called for trial on September 8, 1975, defendants moved for summary judgment as to all claims based upon the alleged derivative nature of the action. Appellants contend the second amended petition failed to comply with K.S.A. 60-223a in several particulars, principally in its failure to allege that plaintiff had made any prior efforts to obtain action by the directors and partners, Gubser and Cohen, and the reasons for failing to make any such efforts. Appellants assert such failure to comply with the statute is jurisdictional. After argument on the motion for summary judgment, the trial court allowed an amendment to the pretrial order, amending plaintiff's pleadings to include allegations that no request was made by plaintiff for action by the directors and officers of the corporation or the other partners of the partnership for the reason plaintiff believed such action would be futile. The trial court also made

the requisite finding that plaintiff could adequately represent the interests of the corporation, limited partnership and Velmer J. Gardner, the 1% limited partner, who was not joined as a party in this action. Over the objections of the defendants, the case then proceeded to trial and, while the record is not entirely clear, apparently as a derivative action under K.S.A. 60-223a and 60-223b.

K.S.A. 60-223a parallels Rule 23.1 of the Federal Rules of Civil Procedure, and authorities interpreting the federal rule are persuasive. While the statute has not been previously before this court, there is considerable authority for the proposition that if the majority of the board of directors are themselves accused of self-dealing, demand upon them to sue themselves is deemed futile. *Liboff v. Wolfson,* 437 F.2d 121 (5th Cir. 1971); *Levitt v. Johnson,* 334 F.2d 815 (1st Cir. 1964), *cert. den.,* 379 U.S. 961, 13 L.Ed.2d 556, 85 S.Ct. 649 (1965); *Pioche Mines Consolidated, Inc. v. Dolman,* 333 F.2d 257 (9th Cir. 1964), *cert. den.,* 380 U.S. 956, 13 L.Ed.2d 972, 85 S.Ct. 1081 (1965); *Meltzer v. Atlantic Research Corporation,* 330 F.2d 946 (4th Cir. 1964), *cert. den.,* 379 U.S. 841, 13 L.Ed.2d 47, 85 S.Ct. 78; *Cathedral Estates v. Taft Realty Corporation,* 228 F.2d 85 (2d Cir. 1955).

Wright and Miller discuss the demand requirement under such conditions as follows:

"In some instances, requiring plaintiff to make a demand on the board of directors to take the action he desires would force him to undertake a purely ritualistic act. An obvious example of a situation of this type is when the basis of plaintiff's complaint is mismanagement or fraud on the part of a majority of the directors itself. Thus, rigid adherence to Rule 23.1 in this context would oblige plaintiff to demand that the directors bring suit against themselves, a futile gesture. . . ." 7A Wright and Miller, Federal Practice and Procedure § 1831, p. 378 (1972).

The courts are generally lenient in excusing the need for a demand prior to bringing a stockholder derivative action when a petition or complaint recites circumstances that would make the demand futile or useless. On a motion to dismiss the complaint for failure to make a prior demand, the usual standard is whether any set of facts can be shown that would prove futility is applicable. *Jannes v. Microwave Communications, Inc.,* 57 F.R.D. 18 (N.D. Ill. 1972). The determination of whether a demand on the corporate directors is necessary or whether an excuse is sufficient to enable the bringing of a derivative action without demand is within the sound discretion of the trial court. *Walden v. Elrod,* 72

F.R.D. 5 (W.D. Okl. 1976); see also *de Haas v. Empire Petroleum Company,* 435 F.2d 1223 (10th Cir. 1970). The trial court did not abuse its discretion in allowing amendment of the pretrial order and the action to proceed derivatively as well as individually. K.S.A. 60-216.

II.

In their second point on appeal appellants argue the doctrines of estoppel, waiver and laches and the statute of limitations bar plaintiff from recovering any damages for most of his claims.

Following the opening of Ramada Inn East, Hornblower, Inc. was receiving a management fee from Hornblower, Ltd. of 5% of its gross income. Newton, Cohen and Gubser received from the corporation a 5% management fee and shared the same equally. At a board of directors meeting in December, 1964, Newton withdrew as an officer of the corporation and relinquished total management to Cohen and Gubser. The parties testified there was a difference of opinion, between Newton on the one hand and Cohen and Gubser on the other, as to how the motel should be managed and they decided "to split the sheets" and not enter into any additional ventures together. Newton, however, retained his position as a director of the corporation and kept his ownership interest in both the corporation and partnership. At the same meeting, the management fee to be paid by the corporation was reduced to 4% of the adjusted gross of all room revenues and was paid equally to Cohen and Gubser. At the annual board meeting in December, 1965, the fee was changed to 3% of gross room sales payable equally to Cohen and Gubser. In December, 1972, the fee was raised to encompass the entire 5% received by the corporation from the partnership and was paid equally to Cohen and Gubser. There were no formal meetings of the board of directors, stockholders or partners between December, 1965 and December, 1972. Cohen and Gubser contend meetings were held informally several times a year at the national and regional meetings of the Ramada Inns, Inc. Newton contends that while he attended those meetings and did talk on occasion with Cohen and Gubser, there were no detailed discussions of the Ramada Inn East operations and no meetings of the three were actually held to set policy or make decisions. No minutes of such alleged meetings were prepared until after a demand was made by Newton in 1972 for a copy of any minutes. Newton had received regular reports from

the corporation from 1964 to 1972 and received regular distributions of dividends from the corporation during this period.

Prior to May, 1967, Ramada Inns, Inc. had been putting pressure upon Cohen and Gubser to open a new motel in Sedgwick County or to expand the existing one. Cohen and Gubser worked out an agreement with the motel land owner to finance the construction of a 47-room addition to the existing motel. The addition was opened in April, 1968. No contact was made by Cohen and Gubser with Newton relative to the plans, financing, construction, etc. of the addition.

May 17, 1967, Hanover House, Inc. was incorporated. The corporate stock was owned 50% by Cohen and 50% by the family of Gubser. Newton was not consulted or advised of the formation or ownership of the corporation. On May 18, 1967, Hanover House, Inc. was assigned the restaurant lease and assumed operation of the food service for the motel. Although the owner of the motel ground had agreed to finance the construction of the 47-room addition, he would not agree to finance the furnishings. On the same date, May 18, 1967, Hanover House, Inc. entered into an agreement whereby Hanover House, Inc. would provide the furnishings for the 47-room addition in return for an assignment of 30% of the profits of Hornblower, Ltd., (the 30% agreement). Newton was not consulted about the 30% agreement. On subsequent financial reports furnished to Newton, the payments under the 30% agreement were shown as "equipment rental." During the same period, from May, 1967 to late 1972, various expenses of Hanover House, Inc. were actually paid by Hornblower, Inc. and Ltd. The ultimate result was to divert substantial funds that would have been available for distribution to Newton, Cohen and Gubser, as equal stockholders of Hornblower, Inc., to Hanover House, Inc. where they were distributed to Cohen and the family of Gubser.

Appellants assert that plaintiff is barred by the doctrines of laches, waiver, estoppel and the statute of limitations from asserting any claims for most of the questioned payments. Plaintiff contends the defenses are not available because the true facts had been concealed from him. He had not been consulted about the 30% agreement nor advised of the ownership of Hanover House, Inc. and the monthly reports did not disclose the true nature of the questioned payments. Cohen and Gubser contend Newton, as

a director and stockholder, took no steps to inquire into the operations of the motel. Defendants assert that Newton, as a director, is chargeable with notice and knowledge of the activities, records and management of the corporation. In support of this contention, appellants cite two Kansas cases setting out the duty of a director to keep himself informed of the affairs of the corporation. *Noll v. Boyle,* 140 Kan. 252, 36 P.2d 330 (1934); *Darling & Co. v. Petri,* 138 Kan. 666, 27 P.2d 255 (1933). In *Darling,* the court stated in the course of its opinion:

"Can a director of a corporation be heard to say that he does not know the nature of the business his corporation is conducting? The duty of a director as a member of its board of directors is to direct, guide and manage its corporate affairs. He is in effect a trustee. To discharge these responsibilities it is his duty to keep himself informed of its business activities, and especially in respect to its business policies. . . .", at page 670.

Appellee counters with this court's recent statement in *Sampson v. Hunt,* 222 Kan. 268, 272, 564 P.2d 489 (1977) dealing with a managing director's duty toward a non-managing director:

". . . Although the majority of the earlier cases held to the contrary, the more recent cases hold that in a closely held corporation where one director or officer has a superior knowledge of corporate affairs because he is intimately involved in the daily operations of the corporation while the other director or officer has only a limited role in corporate management, the fiduciary duty is the same as if the latter were a stockholder not actively engaged in corporate affairs. (*Helms v. Duckworth,* 249 F.2d 482 [D.C. Cir. 1957]; *Childs v. RIC Group, Inc.,* 331 F. Supp. 1078 [N.D. Ga. 1970]; *Kardon v. National Gypsum Co.,* 73 F. Supp. 798 [E.D. Pa. 1947].)"

Kansas has always imposed a very strict fiduciary duty on officers and directors of a corporation to act in the best interest of the corporation and its stockholders. The duty imposed by this position of trust requires an officer or director to work for the general interests of the corporation. *Parsons Mobile Products, Inc. v. Remmert,* 216 Kan. 256, Syl. ¶ 2, 531 P.2d 428 (1975). As recognized in the recent case of *Delano v. Kitch,* 542 F.2d 550, 554 (10th Cir. 1976), the duty imposed by Kansas is much stricter than in many jurisdictions:

"It is apparent from an examination of the Kansas decisions that the prevailing rule in Kansas sets a higher or stricter fiduciary standard required of directors and officers of corporations than in some other jurisdictions. We stated in *Blazer v. Black,* 196 F.2d 139 (10th Cir.), that the Kansas rule was somewhat different from that elsewhere prevailing. This statement was in reference to a director seeking to purchase corporate shares from a stockholder. It would not seem necessary in this

diversity suit to detail the development of the state doctrine. It is sufficient to point out that in the very early Kansas cases of *Thomas v. Sweet*, 37 Kan. 183, 14 P. 545; *Mulvane v. O'Brien*, 58 Kan. 463, 49 P. 607; *Stewart v. Harris*, 69 Kan. 498, 77 P. 277; *Peckham v. Lane*, 81 Kan. 489, 106 P. 464; *Consolidated Oil, Gas & Mfg. Co. v. Overfield*, 113 Kan. 294, 214 P. 809; *Abbott v. Inland Oil*, 161 Kan. 316, 167 P.2d 287, down to *Parsons Mobile Products, Inc. v. Remmert*, 216 Kan. 138, 531 P.2d 428, [(sic) 216 Kan. 256, 531 P.2d 428 (1975)] the position of the Kansas courts has been clear and consistent in enforcing a very strict fiduciary duty on directors in their relation both to the corporation and to the stockholders. The court in *Parsons Mobile Products, Inc. v. Remmert*, 216 Kan. 138, 531 P.2d 428 [(sic) 216 Kan. 256, 531 P.2d 428 (1975)] said: 'The officers and directors of a corporation occupy a position of trust, . . . with respect to the corporation and its stockholders.' "

In the present case there are no third parties involved (other than Gardner with a 1% interest in the limited partnership) and plaintiff relied solely on the good faith of Cohen and Gubser.

Appellants urge that simply because plaintiff Newton had a duty to the corporation to keep himself reasonably apprised of the status of the corporation he should be charged with knowledge of the 30% agreement and other expenditures and should thus be estopped to bring this action. Although this court has held that the doctrine of estoppel is generally applicable to derivative claims (see *Geiman-Herthel Furniture Co. v. Geiman*, 160 Kan. 346, 351, 161 P.2d 504 [1945]; *Fox v. Kansas Farmers' Union Royalty Co.*, 157 Kan. 297, 307, 139 P.2d 815 [1943]), the doctrine is by its very nature equitable. The doctrine of estoppel is for the protection of innocent persons, and as a rule only the innocent may invoke it. *Stratford Arms, Inc. v. Zoning Board of Adjustment*, 429 Pa. 132, 239 A.2d 325 (1968). Equitable estoppel is founded upon principles of morality and fair dealing and is available only for the protection of claims made in good faith. *Singewald v. Girden*, 37 Del. Ch. 252, 139 A.2d 838 (1958). The party raising the defense of estoppel is himself bound to exercise good faith in the transaction. *Board of County Commissioners v. Brown*, 183 Kan. 19, 325 P.2d 382 (1958). Thus, a party may not properly base a claim of estoppel in his favor on his own wrongful act or dereliction of duty, or fraud committed or participated in by him, or on acts or omissions induced by his own conduct, concealment or representations. 28 Am.Jur.2d, *Estoppel and Waiver*, §§ 78, 79 (1966).

In *Harman v. Willbern*, 374 F. Supp. 1149 (D. Kan. 1974), aff'd, 520 F.2d 1333 (10th Cir. 1975), the court held that absent actual

knowledge of the wrongful activities on the part of co-directors, the same cannot be imputed to the other director unless in the exercise of reasonable care attending his responsibilities, he should have been aware of suspicious circumstances demanding corrective action.

The transactions of which defendants say plaintiff should have been aware appeared at the time to be normal and proper, at least on their face. Plaintiff was a director "in name only." No corporate meetings were held for some time. Plaintiff was not actively engaged in the management of the business, having relied on the defendants to do so. Plaintiff also did not call any directors meetings himself. From his viewpoint, all was going well. As stated by the court in *Harman v. Willbern,* 374 F. Supp. at 1163:

"As previously noted, it is only when viewed with the perspective aided by hindsight of what actually occurred that the events which transpired during this seven month period look suspicious. At the time, all of the transactions now relied upon by the plaintiff appeared normal and proper, at least on their face. . . . To now hold that these seemingly normal and proper transactions should have put a prudent director on notice of intended looting or precipitated a thorough investigation, based solely upon what actually transpired, is not permissible."

Defendants were the active managers and officers and partners of both the corporation and the limited partnership, and plaintiff, as a stockholder, director, and limited partner, totally relied upon the defendants' reports for his information. A review of the financial information and other corporate papers furnished by the defendants did not disclose any wrongdoing on behalf of the defendants. The trial court, in weighing the evidence presented, found that plaintiff acted in a reasonable manner in reviewing the financial information provided and that concealment by the defendants was the true cause of plaintiff's lack of knowledge.

Appellants also contend that plaintiff's claim should be barred by the defenses of waiver, laches, estoppel and the statute of limitations.

One cannot take advantage of waiver, laches, estoppel and the statute of limitations where his own concealment is the basis of the delay. The trial court found as a matter of fact the defendants concealed the facts giving rise to this claim and there is ample evidence to support the trial court in this regard.

### III.

The basic issue raised by appellants' third point is who bears

the burden of proof in connection with certain expenditures and actions of the defendants.

In arriving at his decision, the trial judge categorized the plaintiff's actual damages as (1) unauthorized expenditures, and (2) appropriation of business opportunities. The question of the appropriation of business opportunities is included in appellant's fourth point and will be considered later in this opinion.

One of plaintiff's principal claims against the defendants was that they breached their fiduciary duties to the corporation, the limited partnership and the plaintiff, individually, by making unauthorized expenditures of corporate and partnership funds to the benefit of the individual defendants and to the detriment of the corporation, partnership and plaintiff.

Plaintiff first became alarmed in early 1972 that all might not be well at Ramada Inn East when he noticed a substantial jump in management salaries. For the first time, plaintiff inquired about the motel operation and asked for an explanation. In August, plaintiff received a revised financial report which reduced management salaries by $7,200.00 and increased employees meals and accounting expense by $7,200.00. Upon receiving the revised financial report, plaintiff, in September, 1972, retained his personal accountant, E. Thomas Moulder, C.P.A., to investigate the operation of Ramada Inn East. In October, 1972, Mr. Moulder submitted a preliminary report to plaintiff. On October 10, 1972, Cohen and Gubser held a special meeting of the Board of Directors of Hornblower, Inc. and (1) removed plaintiff as a director, (2) amended the by-laws to provide for only two directors (3) eliminated preemptive rights of stockholders, and (4) increased the management fees payable to Cohen and Gubser. On December 18, 1972, Cohen and Gubser voted themselves special compensation of $12,000.00 each.

The trial court, in assessing actual damages, found that Cohen and Gubser had made unauthorized expenditures of corporate and partnership funds to their own personal benefit. Expenses, which should have been paid by Hanover House, Inc., were paid by the corporation or partnership, thereby reducing profits available for distribution to the stockholders and partners, which included plaintiff, and increasing profits to Hanover House, Inc., in which plaintiff did not participate. In addition to restaurant expenses of Hanover House, Inc., paid by the corporation and

partnership, the trial court found that insurance premiums on defendants and members of their families and employees, excessive travel expenses, telephone expenses and excessive salaries and fees were unauthorized expenditures in a total amount of approximately $90,000.00. During the course of the trial, the defendants admitted some 100 payments had been made by error from the corporation or partnership but contended they were honest mistakes and defendants were willing to account for them.

Appellants contend the court was in error in finding there were unauthorized expenditures, other than those admitted by defendants, for the reason the plaintiff did not sustain his burden of proof on the contested items. Mr. Moulder testified for plaintiff and went through certain expenditures, item by item, and stated that he questioned their validity and correctness as corporate or partnership expenses. Moulder did not perform an audit of the books of defendants and did not attempt to personally verify the correctness of the questioned expenditures. Defendants contend such testimony was insufficient and therefore the judgment is not supported by sufficient evidence.

Defendants, in their testimony, merely went through the same expenditures, item by item, and testified they were valid corporate or partnership expenses without any supporting evidence.

Officers and directors of a corporation occupy a strict fiduciary relationship with respect to both the corporation and its stockholders. The same fiduciary standard applies as between directors. *Sampson v. Hunt,* supra.

Any unfair transaction induced by a fiduciary relationship between the parties gives rise to a liability with respect to unjust enrichment of the fiduciary. Where such transaction is attacked, the burden of proof is on the fiduciary to establish the fairness of the transaction, and to this end he must fully disclose the facts and circumstances, and affirmatively show his good faith. *Stewart v. Harris,* 69 Kan. 498, 77 P. 277 (1904); 76 Am. Jur. 2d, *Trusts,* § 230 (1975). Where the fairness of the transaction is challenged, there must be an affirmative showing of fairness and good faith, the burden being upon the parties seeking to sustain such transactions to prove this by clear and satisfactory evidence. *Geddes v. Anaconda Copper Mining Co.,* 254 U.S. 590, 65 L.Ed. 425, 41 S.Ct. 209 (1921); *First Trust & Savings Bank v. Iowa-Wisconsin Bridge Co.,* 98 F.2d 416 (8th Cir. 1938); 19 C.J.S., *Corporations,* § 789 (1940).

Defendants being in a fiduciary relationship toward plaintiff, the corporation and partnership bore the burden of proof in justifying the expenditures once they were put in issue by the plaintiff.

In challenging the trial court's findings with respect to the alleged unauthorized expenditures, defendants contend it was error for the trial court not to believe defendants with respect to their testimony in support of the expenditures. The trial court found defendants simply failed to meet their burden of proof and although a different finder of fact may have weighed the evidence differently, it is not the function of an appellate court to retry the case. As stated in *Parsons Mobile Products, Inc. v. Remmert,* supra, at Syl. ¶ 1:

"On appeal it is not the function of the appellate court to weigh conflicting evidence, pass on the credibility of witnesses or redetermine questions of fact. The reviewing court is concerned only with the evidence which supports the trial court's findings and not with the evidence which might have supported contrary findings."

And more recently, we stated in *Highland Lumber Co., Inc. v. Knudson,* 219 Kan. 366, Syl. ¶ 4, 548 P.2d 719 (1976):

"Upon appellate review this court accepts as true the evidence, and all inferences to be drawn therefrom, which support or tend to support the findings in the trial court, and disregards any conflicting evidence or other inferences which might be drawn therefrom. Where findings are attacked for insufficiency of evidence, or as being contrary to the evidence, this court's power begins and ends with determining whether there is evidence to support such findings. Where the findings are so supported, they will not be disturbed on appeal. It is of no consequence there may have been contrary evidence adduced which, if believed, would have supported different findings."

See also *Farmers State Bank of Ingalls v. Conrardy,* 215 Kan. 334, 524 P.2d 690 (1974).

There was sufficient competent evidence to substantiate the trial court's findings that defendants had the burden of proof and failed in meeting that burden.

### IV.

In their fourth point on appeal defendants attack the court's findings relative to what the trial court denominated "appropriation of business opportunities." These transactions will be referred to as the "30% agreement" and the "site releases."

As early as 1965, Ramada Inn, Inc. indicated that Hornblower,

Ltd., as holder of the Ramada Inn franchise for all of Sedgwick County, should be considering an expansion program by either starting another motel or increasing the size and capacity of the existing motel. By 1967, it became apparent that some expansion was required and plans were developed for construction of a 47-room addition to the Ramada Inn East. Financing for the construction was provided by the owner of the ground but he would not undertake the financing of the necessary equipment, furniture, etc., required to furnish the 47-room addition. Defendants then undertook to form Hanover House, Inc. and it was organized May 17, 1967. On May 18, 1967, Hanover House, Inc. entered into an agreement with Hornblower, Ltd. whereby Hanover House, Inc. would provide the furnishings for the addition in return for a perpetual payment by the partnership of 30% of its net profits. On May 18, 1967, Hanover House, Inc. was assigned the lease for the operation of the restaurant at the motel. Hanover House, Inc. did provide the necessary furnishings for the 47-room addition and the addition opened for business in April, 1968. Plaintiff was not advised or consulted about the construction of the addition or the methods of financing the addition and its furnishings. Monthly payments of 30% of the net profit of the partnership were made to Hanover House, Inc. and shown on the monthly financial statements as equipment rental. Plaintiff was not informed of the fact that the corporate stock of Hanover House, Inc. was owned fifty percent by Cohen and fifty percent by the family of Gubser. The court found from the evidence that the original cost to Hanover House, Inc. of furnishing the 47-room addition was $60,923.81. From May, 1968, through August, 1975, the partnership paid Hanover House, Inc. "equipment rental" of $220,151.48. The trial court awarded actual damages based upon the 30% agreement of approximately $48,000.00, held the agreement void and vested title to the furnishings in the partnership.

Defendants contend the trial court was in error, asserting there was no other financing available, they had done the best they could for the corporation and partnership, and that the method utilized was reasonable and necessary. There was conflicting evidence as to the availability of more conventional means of financing and the trial court findings of fact will not be disturbed on appeal.

The second area of so-called "appropriation of business opportunities" involved certain site releases for the construction of additional Ramada Inns in Sedgwick County. Once again, in 1972, Ramada Inns, Inc. was agitating for more expansion. Defendants contend the corporation and/or partnership were not financially capable of further expansion. A location was available in central Wichita at the intersection of Broadway and Kellogg and defendants, along with two other individuals, formed Kelway, Inc., with each of the four principals owning a 25% interest. The partnership then released to Kelway, Inc. the right to construct a Ramada Inn at the downtown location. A high rise Ramada Inn was subsequently erected and is operating at that location. Due to the distance between Ramada Inn East and Ramada Inn Central, plaintiff does not assert any claim for damages. The next site release involved what is known as Ramada Inn Tudor located at 9100 East Kellogg, only a short distance from Ramada Inn East. Tudor was under construction when its developer encountered financial difficulties and was unable to complete the project. The original development was not contemplated as a Ramada Inn but when the partially completed structure became available, the defendants saw another opportunity for Kelway, Inc. Again, there was a release of the right to construct a Ramada Inn by the partnership to Kelway, Inc. The trial court found that the opening of an additional Ramada Inn in such close proximity to the existing one did cause damage to Ramada Inn East. A trust was imposed upon the interests of Gubser and Cohen in Kelway, Inc., in favor of the limited partnership, to the extent of any monies received by the defendants arising from the Tudor operation.

Defendants argue that under the by-laws of Hornblower, Inc., they had a right to enter into the 30% agreement and the site releases and that such dealings were contemplated when the corporation was formed.

The by-laws provided:

### "CONTRACTS WITH OFFICERS

"All officers of this corporation are permitted to do business with the corporation, either as a supplier of labor, materials or services, either directly for their own account or through any business, firm or corporation in which they may be a stockholder, director or officer. All officers of the corporation therefore shall be in the same position as any other member of the public from the standpoint of doing business with this corporation, and shall not be restricted in any way from doing

business with the corporation because of the fact that the officer or director is an officer or director or stockholder of this corporation."

This provision of the corporate by-laws, with certain restrictions, has now been essentially included in the new corporation code adopted in 1972. K.S.A. 17-6304. However, neither the by-laws of the corporation nor the new code authorizes a breach of the fiduciary duty imposed upon directors and officers, and the statute also requires a full disclosure of the material facts. In the instant case no disclosures were made to plaintiff until he instigated his own investigation. The discussion and authorities cited under point II of this opinion apply equally to the actions of the defendants in appropriating the business opportunities which rightfully should have inured to the benefit of the corporation and the partnership. Corporate officers and directors are required to actively promote the interest of the corporation and shall not place themselves in a position of personal interest conflict. *Delano v. Kitch,* supra; *Parsons Mobile Products, Inc. v. Remmert,* supra.

## V.

Appellants next contend that the trial court erred in the admission of expert testimony as to the reasonableness of the management fees and salaries the defendants allowed themselves.

Plaintiff's witness, Moulder, was allowed to testify that in his opinion the 5% management fee was excessive and that the salaries and bonuses paid the defendants were excessive. Moulder graduated with honors from Cornell University School of Hotel Administration, which included three years of summer apprenticeship in hotel administration. He spent the next thirteen years in management positions of hotels and motels of comparable size to Ramada Inn East. He handled every phase of hotel, food and beverage operations. He obtained a license as a certified public accountant in the State of Missouri and has handled all the accounting functions of the Ramada Inn operation in Springfield, Missouri, since January, 1969.

It would appear that Moulder was eminently qualified in the field of hotel and motel management. The qualifications of an expert witness and the admissibility of his testimony are within the sound discretion of the trial judge. *Plains Transp. of Kan. v. King,* 224 Kan. 17, 21, 578 P.2d 1095 (1978), and cases cited therein. The trial court did not abuse its discretion in allowing the

testimony of the witness Moulder and its finding of actual damages is amply supported by the evidence. The evidence revealed that plaintiff, Gubser and Cohen had each received $67,960.00 in dividends and in addition, Gubser and Cohen had each received an additional $106,150.00 in fees and salaries.

When compensation or bonuses are voted by the directors to themselves, they must be reasonable and commensurate with the value of the services rendered. Knepper, Liability of Corporate Officers and Directors (2d Ed. 1973), § 6.06, p. 109. See also *Missouri River R.R. Co. v. Richards,* 8 Kan. 101 (1871). An officer-director whose vote is necessary to pass a resolution fixing compensation has the burden of showing its reasonableness. *Wilderman v. Wilderman,* 315 A.2d 610 (Del. Ch. 1974). The same rule applies to officer-directors who are also the majority stockholders. *Goldman v. Jameson,* 290 Ala. 160, 275 So. 2d 108 (1973); Knepper, supra, § 4.10, at 21 (Supp. 1976).

Defendants, having the burden of showing the reasonableness of the salaries and the management fees, failed to convince the trial court. The entire course of conduct by the defendants during this period of time demonstrates a lack of good faith and their intent to victimize the plaintiff. When plaintiff started his investigation of the defendants' activities, he was immediately removed from the board of directors; salaries, never before authorized, were approved and paid by the defendants to themselves; management fees were increased; and dividends to plaintiff terminated. These facts were considered by the trial court and adequately substantiate his findings in this regard.

### VI, VII and VIII.

Appellants' next three points deal with the allowance of punitive damages, attorney fees and expenses to plaintiff. We will first address the issue of punitive damages.

Appellants contend it was error for the trial court to allow punitive damages in a stockholders' derivative action as such an action has traditionally been a suit in equity rather than one at law. Appellants cite a volume of legal authority for the abstract proposition that in an equity action the court is without power to award punitive damages. Assuming, without deciding, that this ancient distinction still prevails, appellants totally ignore the fact that the claims of the plaintiff, in addition to their derivative nature, were also brought individually as a stockholder and

partner against the defendants and that the trial court found as a matter of law that the defendants had breached their fiduciary duty to the plaintiff. This court, on several occasions, has approved the recovery of punitive damages as well as actual damages where a breach of a fiduciary duty is involved. *Ford v. Guarantee Abstract & Title Co.,* 220 Kan. 244, 553 P.2d 254 (1976); *Beverly v. McCullick,* 211 Kan. 87, 505 P.2d 624 (1973); *Koch v. Merchants Mutual Bonding Co.,* 211 Kan. 397, 507 P.2d 189 (1973); and see 14 Washburn L.J. 466 (1975). There was no error in the allowance of punitive damages.

Appellants next contend that if punitive damages are recoverable in the instant case then the court abused its discretion in the amount of damages awarded. Punitive damages in the amount of $100,000 were assessed against Gubser and $125,000 against Cohen. The amounts are substantial. A careful examination of the entire record justifies the conclusion reached by the trial court that defendants systematically embarked upon a course of conduct designed to deprive plaintiff of his rightful share of the fruits of his investment. Defendants assert that plaintiff should not be heard to complain because he has received a substantial return on an original investment of $400.00. It is undoubtedly true that the returns to all three investors were fantastic. Between December 31, 1965, and December 31, 1973, plaintiff and defendants Cohen and Gubser had each received $67,960.00 in dividends. However, the defendants also received another $106,150.00 each, by way of fees and salaries, mostly through concealment and deception. It is also true, however, that defendants did all the work and plaintiff had washed his hands of all responsibility for operation of the motel. It is obvious that, as early as 1967, when Hanover House, Inc. was formed, defendants had concocted a scheme which ultimately led to the diversion of all the profits of the corporation and partnership to the defendants or entities controlled by them. The end result was the cessation of the payment of any dividends or partnership profits to plaintiff.

"Exemplary, or punitive, damages are generally defined or described as damages which are given as an enhancement of compensatory damages because of the wanton, reckless, malicious, or oppressive character of the acts complained of. Such damages go beyond the compensatory damages suffered in the case; they are allowed as a punishment of the defendant and as a deterrent to others. . . ." 22 Am. Jur. 2d, *Damages,* § 236 (1965).

Kansas has long followed this rule. In *Watkins v. Layton,* 182 Kan. 702, 324 P.2d 130 (1958), this court said at p. 705:

"The earliest Kansas cases indicate that damages, sometimes called exemplary, vindictive or punitive, are permitted whenever the elements of fraud, malice, gross negligence, or oppression mingle in the controversy. (*Malone v. Murphy,* 2 Kan. 250; *Albert Wiley v. Keokuk,* 6 Kan. 94; and *Cady v. Case,* 45 Kan. 733, 26 Pac. 448.) Such damages are allowed not because of any special merit in the injured party's case, but are imposed by way of punishing the wrongdoer for malicious, vindictive, or a willful and wanton invasion of the injured party's rights, the purpose being to restrain and deter others from the commission of like wrongs. (*Stalker v. Drake,* 91 Kan. 142, 136 Pac. 912; see, also, *Townsend v. Seefeld,* 102 Kan. 302, 169 Pac. 1157; and 15 Am. Jur., Damages, § 266, p. 700.)"

Considering the avowed purpose of punitive damages and the actions of the defendants in this case, we cannot say that the amount of punitive damages shocks the conscience of the court or that the trial court abused its discretion in the allowance of such amounts.

In addition to the punitive damages granted plaintiff, the trial court granted plaintiff judgment for $69,576.06 for attorney fees and expenses incurred in the litigation. Plaintiff has also asked this court to allow an additional $24,298.79 for attorney fees and expenses incurred subsequent to the entry of judgment. Appellants cite numerous decisions of this court wherein we have repeated the long standing rule that attorney fees and expenses of a prevailing party in litigation are not recoverable from the defeated party in the absence of a clear and specific statutory provision therefor. Appellants rely on the following Kansas cases as authority for their position: *Schwartz v. Western Power & Gas Co., Inc.,* 208 Kan. 844, 494 P.2d 1113 (1972); *Gault v. Board of County Commissioners,* 208 Kan. 578, 493 P.2d 238 (1972); *McGuire v. McGuire,* 190 Kan. 524, 376 P.2d 908 (1962); *Ablah v. Eyman,* 188 Kan. 665, 365 P.2d 181 (1961); *Vonachen v. Pratt Glass Co.,* 172 Kan. 545, 241 P.2d 775 (1952); *Myers v. Strauss,* 171 Kan. 91, 229 P.2d 774 (1951); *Murrow v. Powell,* 167 Kan. 283, 205 P.2d 1193 (1949); *State, ex rel. v. Sage Stores Co.,* 158 Kan. 146, 145 P.2d 830 (1944); *Beck v. Good,* 147 Kan. 578, 77 P.2d 968 (1938); *Nicholson v. Fawley,* 112 Kan. 124, 210 P. 482 (1922); *Zimmerman v. McMurphy,* 111 Kan. 654, 208 P. 642 (1922); *Evans v. Insurance Co.,* 87 Kan. 641, 125 P. 86 (1912); *Stover v. Johnnycake,* 9 Kan. 367 (1872).

On the other hand, appellee contends that the prevailing rule is that attorney fees and expenses are recoverable in a stockholders'

derivative action. Persuasive arguments are propounded in support of plaintiff's position. See *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 24 L.Ed.2d 593, 90 S.Ct. 616 (1970); *Bailey v. Meister Brau, Inc.,* 378 F. Supp. 883 (N.D. Ill. 1974); *Tanzer v. Huffines,* 315 F. Supp. 1140 (D. Del. 1970); *Cole Real Estate Corp. v. Peoples Bank & Trust Co.,* 160 Ind. App. 88, 310 N.E.2d 275 (1974); 13 W. Fletcher, Cyclopedia of the Law of Private Corporations, §§ 6044 and 6045 (rev. perm. ed. 1970).

This court has long recognized that consideration of attorney fees and costs of litigation may be taken into consideration in arriving at the amount of punitive damages in an appropriate case. *Brewer v. Home-Stake Production Co.,* 200 Kan. 96, 434 P.2d 828 (1967), and cases cited therein. In commenting upon his award of attorney fees, the trial judge in this case stated that he had not taken them into consideration in his determination of the amount of punitive damages but would have done so if he felt the attorney fees were not properly recoverable. Plaintiff argues that, based upon the judge's remarks, the attorney fees should be allowed as punitive damages. To increase the already substantial punitive damages by such an amount would, in our opinion, be excessive. Regardless of the trial court's comment, we are not inclined to depart from the long established rule in Kansas that attorney fees, as such, are not recoverable absent statutory authority. Additionally, we might point out that while the case at bar was brought by plaintiff, both individually and derivatively, as a matter of fact, he was the only stockholder other than the two individual defendants. His action was not one predicated to benefit a large group of other individuals at plaintiff's expense as is frequently true in a stockholders' derivative action. We hold that under the factual circumstances of this case, it was error to grant plaintiff judgment for attorney fees and expenses of litigation absent express statutory authority. For the same reason, plaintiff's request for fees and expenses on appeal is denied.

## IX.

Appellants' final major point on appeal is a catchall of various complaints based upon alleged bias and prejudice of the trial judge. Appellants contend they have not received a fair trial. The trial of this action was hotly contested, lasted several days and resulted in a voluminous record. We have carefully examined the record and all of the court's various rulings, findings, conclusions

and judgments and find no merit in appellants' position. All parties were given every opportunity to adequately present their evidence, the court made 96 detailed findings of fact and conclusions of law, which cover 30 pages of the record, and also went to great lengths to explain its findings and conclusions in a supplemental memorandum and subsequent court hearings.

The judgment is affirmed with the exception of the judgment for attorney fees and expenses in the sum of $69,576.06, which is reversed and set aside.

Plaintiff's application for additional fees and expenses on appeal is denied.