NOT DESIGNATED FOR PUBLICATION

No. 128,771

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DR. MARK P. TROILO, D.D.S., and DR. CHRISTOPHER LEISZLER, D.D.S.,
*Appellees/Cross-appellants*,

v.

GARY YAGER, KIM BORCHERS, ANGELA MCCLURE, SHAWN NACCARATO,
RUTH TEICHMAN, and NANCY ZOGLEMAN,
*Appellants/Cross-appellees*,

and

DR. BRICK R. SCHEER, D.D.S., DR. NICHOLAS A. TROILO, D.D.S., DR. PATRICK
MORIARTY, D.D.S., and DR. LUCYNDA RABEN D.D.S.,
*Appellees/Cross-appellees*,

and

DELTA DENTAL OF KANSAS, INC.,
*Nominal Defendant-appellant/Cross-appellee.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WILLIAM S. WOOLLEY, judge. Oral argument held
January 6, 2026. Opinion filed April 17, 2026. Reversed and remanded with directions.

*Anne M. Kindling* and *Diane L. Bellquist*, of Joseph, Hollander & Craft LLC, of Topeka, for
nominal defendant-appellant Delta Dental of Kansas, Inc.

*Gary L. Ayers* and *Charles E. McClellan*, of Foulston Siefkin LLP, of Wichita, for
appellants/cross-appellees Gary Yager, Kim Borchers, Angela McClure, Shawn Naccarato, Ruth
Teichman, and Nancy Zogleman.

1

*James Robinson, Jr.*, of Hite, Fanning & Honeyman L.L.P., of Wichita, and *Windell G. Snow*, of Law Office of Windell G. Snow, P.A., of Wichita, for appellees/cross-appellants Dr. Mark P. Troilo, D.D.S., and Dr. Christopher Leiszler, D.D.S.

*Tracy M. Hayes*, of Sanders Warren & Russell LLP, of Overland Park, for appellees/cross-appellees Dr. Brick R. Scheer, D.D.S., Dr. Nicholas A. Troilo, D.D.S., Dr. Patrick Moriarty, D.D.S., and Dr. Lucynda Raben, D.D.S.

Before ISHERWOOD, P.J., CLINE and COBLE, JJ.

CLINE, J.: This case involves a dispute about the meaning of Delta Dental of Kansas, Inc.'s (DDKS) corporate formation documents; namely, whether DDKS members must approve amendments to DDKS's articles of incorporation and bylaws. Plaintiffs, who are both dentist members of DDKS, brought a derivative action against DDKS's board of directors and DDKS. They sought declaratory relief to invalidate amendments to DDKS's articles of incorporation and bylaws adopted by DDKS's board in 2020 (2020 Board Amendments), claiming the directors breached their fiduciary duties when they adopted those amendments.

Based on its interpretation of the pre-amended version of DDKS's articles of incorporation, the district court found the 2020 Board Amendments were improperly adopted and therefore void. While it did not find DDKS's directors breached any fiduciary duties, the court did find the directors acted inequitably in the procedures they used to adopt the 2020 Board Amendments, including amending DDKS's articles and bylaws without approval from DDKS's members. As a result, the court directed DDKS to refile the pre-amended version of its articles with the Kansas Insurance Commissioner.

After reviewing the record and applicable law, we find the district court misinterpreted DDKS's articles of incorporation to require member approval of amendments to those articles. We therefore reverse the district court's ruling declaring the

2

2020 Board Amendments to be void because they were adopted without member approval. We also reverse the court's judgment awarding plaintiffs equitable relief under their breach of fiduciary duty claim because the district court found DDKS's directors did not breach any fiduciary duties. We remand the case for consideration of plaintiffs' remaining claims that the content of the 2020 Board Amendments and the procedures DDKS's directors used to enact them rendered any or all of the 2020 Board Amendments illegal, invalid, and unenforceable.

FACTUAL AND PROCEDURAL BACKGROUND

DDKS is a nonprofit dental service corporation formed in 1972, which provides dental insurance services to group and individual subscribers in accordance with the Nonprofit Dental Service Corporation Act, K.S.A. 40-19a01 et seq. (the Act). The Act requires that a 10-person board of directors manage DDKS's affairs. The Kansas government's executive branch has the power under the Act to appoint six of those directors; two by the Governor and four by the Kansas Commissioner of Insurance (the appointed directors). DDKS's member dentists have the power to elect the four other directors (the elected directors). DDKS has a practicing agreement with approximately 95% of licensed dentists in Kansas.

In an effort to retain the State of Kansas' business, DDKS agreed to reduce dentist fees and administrative service contract fees paid to DDKS, effective January 1, 2019. At that time, DDKS served 47,000 subscribers and 100,000 enrollees on behalf of the State of Kansas, which represented about 10% of DDKS's business.

In June 2019, plaintiffs sent DDKS's Chairperson and CEO proposed bylaw amendments. Among other topics, these amendments addressed dentist reimbursement rates and policies establishing such rates.

3

At that time, DDKS's articles of incorporation and bylaws gave DDKS's members the power to "adopt, alter, amend or repeal" DDKS's bylaws. DDKS's bylaws stated:

"The power to adopt, alter, amend, or repeal this Corporation's bylaws, in whole or in part, shall be vested in the Membership. The terms of any amendment to the bylaws which is proposed by the Membership and/or the Corporation, and the rationale therefor, shall be submitted in writing to the Chairperson of the Board and the President/Chief Executive Officer of the Corporation at least 60 days prior to the Membership meeting at which action upon such proposed amendment is to be taken. At least 30 days prior to the Membership meeting at which action upon such proposed amendment is to be taken, written notice of the terms of the amendment and the rationale therefor shall be provided to the members. In addition, the Corporation may comment on the advisability of any proposed amendment(s)."

Plaintiffs, DDKS's CEO, and their respective attorneys communicated and met over the next several months to discuss plaintiffs' proposed amendments and DDKS's concerns about those amendments. DDKS's CEO advised plaintiffs that their procedural amendments could be proposed for a vote at the August 2019 DDKS member meeting. But the CEO said DDKS's board would need to seek court guidance on how to proceed regarding the amendments which proposed substantive changes. Plaintiffs agreed to withdraw their substantive amendments, and the procedural ones were proposed and adopted at the August 2019 DDKS member meeting.

In March 2020, plaintiffs submitted amendments to DDKS's articles and bylaws which were largely the same as the substantive amendments they had previously proposed. In April 2020, plaintiffs withdrew those amendments and proposed a modified version. Plaintiffs, DDKS's CEO, and their respective attorneys again communicated over the next several months to discuss plaintiffs' amendments and DDKS's concerns about those amendments. At one point, plaintiffs agreed their proposed amendments would not be presented for action at the August 2020 DDKS's members annual meeting. But at that

4

meeting, DDKS's CEO delivered a 37-slide presentation on why DDKS's board of directors believed the proposed amendments would severely harm both DDKS and its dentist members.

By October 2020, one of the plaintiffs sent each member of DDKS's board of directors a copy of plaintiffs' proposed amendments with a letter explaining plaintiffs' concerns about how DDKS was managing its business. DDKS's management advised DDKS's board that it believed plaintiffs' proposed amendments threatened DDKS's viability, as previously expressed when discussing other versions of plaintiffs' amendments which proposed substantive changes. DDKS's Chairperson then asked DDKS's attorneys "to prepare draft defensive amendments to the Articles and the 2019 Bylaws for consideration by the Directors during the Board's December 11, 2020, Board meeting." Between November 16, 2020, and December 11, 2020, two DDKS Board members (Gary Yager and Nancy Zogleman) worked with counsel to develop amendments to DDKS's articles and bylaws (which ended up being the 2020 Board Amendments).

In the end, DDKS's board of directors adopted the 2020 Board Amendments at a regularly scheduled DDKS Board meeting on December 11, 2020. The 2020 Board Amendments were not provided to DDKS's board before the meeting, nor were they listed on the agenda for that meeting. But the member-proposed amendments and DDKS's board's responses to those amendments were listed on the agenda. The purported reasons for not providing the 2020 Board Amendments were that Yager and Zogleman believed that confidential information shared amongst DDKS's board had been shared with plaintiffs in the past and one of DDKS's elected directors is the son of one of the plaintiffs.

During that DDKS Board meeting, DDKS's CEO presented a PowerPoint presentation on the adverse impact of plaintiffs' proposed amendments. Yager and

Zogleman told the DDKS Board about the 2020 Board Amendments, provided copies, and said they proposed the amendments to "provide some closure and protect the company," and that "[t]he proposed amendments would not end dialog or discussion. Instead the intent is to resolve the issues to clarify that dentist proposals cannot harm DDKS, increase risk, interfere with the Board's authority or violate the law or DDKS contracts." And DDKS's counsel advised DDKS's board on plaintiffs' proposed amendments and on the 2020 Board Amendments. In the vote adopting the 2020 Board Amendments, all six appointed directors voted for the 2020 Board Amendments and all four elected directors voted against.

One of the 2020 Board Amendments adopted at this meeting amended DDKS's articles of incorporation as follows:

"ARTICLE V

"Membership Organization

"A.     This Corporation shall not have authority to issue capital stock~~, and all voting powers normally vested in stockholders shall be vested in the members of this Corporation~~. The membership of this Corporation shall be comprised of the dentists who have currently executed participating agreements with the Corporation as provided in the Act."

Further changes gave DDKS's board sole authority to "adopt, alter, amend or repeal" the articles of incorporation. These amendments to DDKS's articles stated, in part:

"ARTICLE VII

"Amendments of Articles or Bylaws

"A.     The power to adopt, alter, amend or repeal these Articles, in whole or in part, at any time and from time to time, shall, to the maximum extent permitted under the Corporate Code, be vested exclusively in the Board and shall occur upon an affirmative vote of a majority of the Board and a vote of the majority of the Appointed Directors.

6

"B.     The power to adopt, alter, amend or repeal this Corporation's Bylaws, in whole or in ~~apart~~part, at any time and from time to time, shall be vested concurrently in the ~~Membership.~~Board and the membership.

1.     To be considered for adoption, proposed Bylaws amendments shall not be inconsistent with the Corporation's purposes, these Articles, the Act, the Code, the Corporate Code and any other law or regulation, and the principles reflected in paragraph 3 below, all as interpreted and applied by the Board (a 'Properly Proposed Amendment'). Each Bylaws amendment proposal will first be reviewed and considered in its entirety by the Board such that if all or any portion of such proposal is inconsistent with the requirements of a Properly Proposed Amendment, it will not then be submitted to the members for consideration or action.

2.     In the event the members wish to propose a Properly Proposed Amendment, they may do so as generally provided in these Articles and the Bylaws, to the extent the Bylaws are not inconsistent with these Articles. Following any favorable determination by the Board that the proposal constitutes a Properly Proposed Amendment, notice and any comments or additional information regarding such proposal will be provided to the members as set forth in the Bylaws.

3.     In addition to satisfying the foregoing requirements and principles, any proposed Bylaws amendment shall not be submitted to the members for approval if such proposal:

a.     Would cause material harm to the Corporation or be inconsistent with the principles regarding the Board's exclusive authority and discretion set forth in Article VI above;

b.     Would cause the Corporation to violate any state, federal or foreign law, regulation, or rule to which it is subject, or violate or breach an existing contract or agreement or the Delta Dental Plans

7

Association ('DDPA') membership requirements or any rules, guidelines or policies of DDPA; and

        c.     Contemplates action that, if implemented, would cause a director to breach his or her fiduciary duty to the Corporation.

4.     If the Board determines a proposed Bylaws amendment does not constitute a Properly Proposed Amendment, then upon the request of the proposing party, the Board may agree to meet or engage in non-binding mediation regarding the terms of the proposal."

DDKS's directors also amended DDKS's bylaws to provide that "[t]he power to adopt, alter, amend, or repeal these bylaws, in whole or in part, shall be concurrently vested in the Membership and the Board."

DDKS sent the amended articles and bylaws to the Kansas Commissioner of Insurance.

Soon after this meeting, plaintiffs brought a derivative suit against DDKS's board of directors on behalf of DDKS. They claimed the 2020 Board Amendments both in content and in the procedures adopting them violated Kansas law and DDKS's pre-amended articles and bylaws and that DDKS's directors breached their fiduciary duties to plaintiffs and DDKS in adopting the 2020 Board Amendments.

Plaintiffs moved for summary judgment, seeking declaratory judgment to invalidate the 2020 Board Amendments. The appointed directors and DDKS also moved for summary judgment, asking for judgment declaring: DDKS's board lawfully amended the articles without a member vote in 2020, the content of the 2020 Board Amendments was legal, and DDKS's board did not breach any fiduciary duties by adopting the 2020 Board Amendments. And they claimed plaintiffs lacked standing to bring a derivative

8

suit because they did not fairly and accurately represent DDKS's members and did not make a pre-suit demand or establish the futility of that demand as required by K.S.A. 60-223a.

The district court granted plaintiffs' motion on count I (declaratory judgment) and denied the appointed directors' and DDKS's cross-motion. It found plaintiffs had standing and had established the futility of a pre-suit demand. It also found DDKS's board did not have the power to adopt the 2020 Board Amendments because it interpreted the pre-amended DDKS's articles to require member approval of amendments to DDKS's articles. But the district court denied summary judgment on count II (breach of fiduciary duty) after finding material factual disputes existed which prevented judgment on this count.

The district court also dismissed the elected directors after granting their separate motion for summary judgment, finding that the elected directors objected to the procedures by which the 2020 Board Amendments were proposed and that they voted against those amendments. As a result, the court determined plaintiffs failed to show the elected directors breached any fiduciary duties owed to plaintiffs or DDKS.

The district court then held a bench trial on stipulated facts for plaintiffs' breach of fiduciary duty claim against the appointed directors. Afterward, the court decided the appointed directors did not breach their fiduciary duties. Even so, it found the 2020 Board Amendments were inequitable in their substance and in the procedures the appointed directors used to propose and pass them. In the end, the district court ordered DDKS's corporate secretary to file with the Kansas Insurance Commissioner the articles and bylaws as they previously existed, before the 2020 Board Amendments.

DDKS and the appointed directors appealed the district court's decision to void the 2020 Board Amendments, its determination that the 2020 Board Amendments were

inequitable, its award of equitable relief based on those findings, and its findings that plaintiffs had standing to bring their derivative action and had established the futility of a pre-suit demand. Plaintiffs cross-appealed the district court's finding that the elected directors did not breach any fiduciary duty.

REVIEW OF APPELLATE CHALLENGES

I. *Did the district court err in finding plaintiffs properly brought a derivative action?*

Before reviewing the district court's findings on the two claims brought by plaintiffs, we must first consider the jurisdictional and standing arguments brought by DDKS and the appointed directors.

The appointed directors and DDKS claim the district court had no jurisdiction over plaintiffs' lawsuit because they contend plaintiffs did not comply with the requirements to bring a derivative action under K.S.A. 60-223a. First, they claim plaintiffs lack standing to bring a derivative action because plaintiffs do not fairly and adequately represent the interests of DDKS's members, as required by K.S.A. 60-223a(a). Next, they claim plaintiffs lack standing because plaintiffs did not make a pre-suit demand or properly plead that demand was excused as futile, as required by K.S.A. 60-223a(b)(3).

*Standard of Review and Relevant Legal Framework*

Our Supreme Court has said that a "court without jurisdiction is no court at all, but an expensive debate club overseen by a powerless spectator in a black choir robe." *Benchmark Property Remodeling v. Grandmothers, Inc.*, 319 Kan. 227, 228, 553 P.3d 974 (2024). Standing is a component of subject matter jurisdiction and includes a party's right to seek judicial enforcement of a duty or right. *Kansas Bldg. Industry Workers Comp. Fund v. State*, 302 Kan. 656, 678, 359 P.3d 33 (2015).

10

A plaintiff must satisfy the procedural requirements of K.S.A. 60-223a to have standing to bring a derivative action on behalf of the corporation in which the plaintiff is a member. See *Levine v. Smith*, 591 A.2d 194, 200 (Del. 1991), *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000); *Moody v. Nat'l W. Life Ins. Co.*, 634 S.W.3d 256, 272 (Tex. App. 2021).

The question of standing is one of law over which Kansas appellate courts have unlimited review. *Mid-Continent Specialists, Inc. v. Capital Homes*, 279 Kan. 178, 185, 106 P.3d 483 (2005). And to the extent we are required to interpret K.S.A. 60-223a, this also presents a question of law over which we have unlimited review. *Bruce v. Kelly*, 316 Kan. 218, 224, 514 P.3d 1007 (2022).

*K.S.A. 60-223a outlines the pleading requirements for bringing a derivative action in Kansas.*

Shareholder derivative actions are brought by a representative on behalf of a corporation to enforce a right that the corporation has failed to enforce. *Ross-Williams v. Bennett*, 55 Kan. App. 2d 524, 544, 419 P.3d 608 (2018). Kansas courts have found, "[w]hen a corporation has been injured by the actions of those in control thereof, the well-established general rule is that the suit seeking redress for such a grievance belongs to the corporation and must be brought as a derivative action . . . ." *Lightner v. Lightner*, 46 Kan. App. 2d 540, Syl. ¶ 2, 266 P.3d 539 (2011).

In Kansas, derivative actions are controlled by K.S.A. 60-223a. A derivative action may be commenced by "one or more shareholders or members of a corporation or an unincorporated association" who "fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." K.S.A. 60-223a(a).

11

The derivative petition must be verified. K.S.A. 60-223a(b). And it must: (1) "allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law," K.S.A. 60-223a(b)(1); (2) "allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack," K.S.A. 60-223a(b)(2); and (3) "state with particularity" the efforts made by the plaintiff "to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members" as well as "the reasons for not obtaining the action or not making the effort." K.S.A. 60-223a(b)(3)(A), (B).

1. *Plaintiffs fairly and adequately represent the interests of DDKS's membership.*

DDKS and the appointed directors first contend the district court lacked jurisdiction because the members who sued did not adequately represent DDKS members as a whole. They argue the record is filled with evidence of plaintiffs' malice and perceived malice towards DDKS. And they submit that plaintiffs' personal animosity towards DDKS shows they are unable to represent the class of plaintiffs for a derivative action. To summarize, DDKS and the appointed directors maintain the reason behind plaintiffs' suit is

> "to further their personal agenda in their proposed amendments to the corporate governance documents, which would eviscerate DDKS's business model, risk its tax-exempt status, and lead to its demise rather than its preservation and advancement, and therefore is not in the interests of DDKS or its members as a whole."

But the district court found that as members of DDKS, plaintiffs could bring this action. It also concluded that plaintiffs sufficiently stated facts showing the purpose of the lawsuit, which is to challenge the legality of the appointed directors' actions and the effect on DDKS. And it determined any animosity on plaintiffs' part towards DDKS's board was ultimately irrelevant to that purpose.

Upon review, we see no error in the court's determination. As plaintiffs point out, DDKS and the appointed directors misperceive the purpose of plaintiffs' lawsuit and the purpose of a derivative action. For one, plaintiffs did not sue to enforce or require DDKS to adopt their proposed amendments—they sued for a declaration that the appointed directors did not follow DDKS's articles of incorporation when adopting the 2020 Board Amendments. Any desire by plaintiffs to seek adoption of their proposed amendments is outside the scope of their lawsuit and does not disqualify them from fairly and adequately representing member interests in enforcing DDKS's articles, which is the object of their suit. Furthermore, any alleged animosity by plaintiffs towards DDKS is beside the point. As plaintiffs note, derivative actions are often brought to challenge board action. If opposition to board action disqualifies plaintiffs, then very few suits could be brought and the purpose of derivative actions would be eviscerated. DDKS and the appointed directors fail to explain how plaintiffs' opposition to the DDKS's board's actions is unique from any other minority member who opposes board action.

DDKS and the appointed directors have failed to show plaintiffs do not fairly and adequately represent the interest of DDKS's members to the extent those members seek to enforce what they perceive as DDKS's members' power under the articles of incorporation. Thus, we find the district court did not err in determining plaintiffs met this requirement to bring their derivative action.

2. *Plaintiffs' petition adequately recites circumstances showing pre-suit demand futility.*

DDKS and the appointed directors next claim plaintiffs lack standing to assert derivative claims because they allege plaintiffs made no pre-suit demand on DDKS nor did plaintiffs plead sufficient facts to show such a demand was futile. DDKS and the appointed directors contend the district court applied the wrong test to determine this issue and should have used a three-prong test applied by Delaware courts. This test,

outlined in *United Food & Commer. Workers Union v. Zuckerberg*, 262 A.3d 1034, 1059 (Del. 2021), would require plaintiffs to show: (1) whether appointed directors received a material personal benefit from the alleged misconduct that is the subject of the litigation demand, (2) whether the appointed directors face a substantial likelihood of liability on the claims at issue, and (3) whether the appointed directors lack independence from another director who received a personal benefit or faced a substantial likelihood of liability under the first two prongs of the test. DDKS and the appointed directors also contend plaintiffs cannot satisfy this test.

On this issue, K.S.A. 60-223a(b)(3) requires a verified petition in a derivative action to "state with particularity: (A) Any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." As the district court pointed out, the Kansas Supreme Court has interpreted this requirement to mean that "[n]o requirement of a demand prior to bringing a shareholder derivative action is necessary when the petition recites circumstances showing the demand would be futile." *Newton v. Hornblower, Inc.*, 224 Kan. 506, Syl. ¶ 2, 582 P.2d 1136 (1978). And the "[t]he test on a motion to dismiss a petition under K.S.A. 60-223a, for failure to make a prior demand on the board of directors for the desired action, is whether any set of facts can be shown that would prove the making of the demand would have been futile." 224 Kan. 506, Syl. ¶ 3. "The determination of whether a demand on the corporate directors is necessary or whether an excuse is sufficient to enable the bringing of a derivative action without demand is within the sound discretion of the trial court." 224 Kan. at 511.

DDKS and the appointed directors sidestep the requirements outlined in K.S.A. 60-223a and ignore *Newton*. Put differently, their standing arguments focus on the merits of the derivative suit, rather than addressing the plain language of K.S.A. 60-223a governing the necessary procedural steps to bring a derivative action in Kansas. And while they admit Kansas courts have never adopted any particular test to determine which

14

circumstances make demand futile—as articulated in *Newton*—they provide no reason for us to adopt Delaware's test for demand futility which appears much more stringent than Kansas' statutory one.

As explained in *Newton*, Kansas' test simply asks whether any set of facts can be shown that would prove the making of the demand on the corporation would have been futile. Here, the court found that since the appointed directors were accused of self-dealing, plaintiffs demonstrated sufficient demand futility at the pleading stage under the Kansas test. It also pointed out that plaintiffs sent an 11-page letter to the appointed directors objecting to the 2020 Board Amendments before filing their lawsuit. While the court acknowledged a letter might not be an exact equivalent to a plaintiff's demand on the board to make changes, it found that under Kansas law such a letter from an attorney qualifies as a close second for purposes of the demand futility requirement.

Upon review of plaintiffs' verified petition, we see no error in the court's decision. Plaintiffs alleged that pre-suit demand would have been futile because the Board's 2020 Amendments benefited DDKS's board and that DDKS's board was antagonistic to the lawsuit. As the court pointed out, the 2020 Board Amendments took power from DDKS's members and gave it to DDKS's board and then marginalized the power of the elected directors by changing voting requirements. Under these circumstances, we find plaintiffs sufficiently alleged circumstances showing pre-suit demand would have been futile. We therefore agree plaintiffs have standing to bring this derivative action, giving the district court jurisdiction over their suit.

II. *Did the district court err in finding the pre-amended version of DDKS's articles of incorporation provided for member approval of articles amendments?*

The district court found DDKS's board of directors did not have the power to adopt the 2020 Board Amendments because it interpreted the pre-amended version of

DDKS's articles of incorporation and bylaws to require member approval of such amendments. It based this decision on the language in DDKS's articles, as they existed before the 2020 Board Amendments, focusing on the phrase which is italicized below:

"V. Membership Organization

"This Corporation shall not have authority to issue capital stock, *and all voting powers normally vested in stockholders shall be vested in the members of this Corporation*. The membership of this Corporation shall be comprised of the dentists who have currently executed participating agreements with the corporation as provided in the Act. Each member shall be entitled, at every meeting of the members, to one vote per person, but no member shall be entitled to vote by proxy." (Emphasis added.)

Based on its interpretation of the corporation code, K.S.A. 17-6001 et seq. (the Code), the district court read this phrase to mean articles amendments required member approval. As such, it found the 2020 Board Amendments were illegal and void since they were not approved by DDKS's members.

*Standard of Review and Relevant Legal Framework*

The interpretation and legal effect of written instruments, like corporate articles and bylaws, are matters of law over which an appellate court exercises unlimited review. *Kansas Heart Hospital v. Idbeis*, 286 Kan. 183, 194, 184 P.3d 866 (2008); see *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018). The same rules apply when interpreting statutes like the corporation code. *Bruce*, 316 Kan. at 224.

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *Johnson v. U.S. Food Service*, 312 Kan. 597, 600, 478 P.3d 776 (2021). Appellate courts "begin with the plain language of the statute, giving common words their ordinary meaning." 312 Kan. at 600. When a statute is plain and unambiguous, an appellate court should refrain from speculating

16

about the legislative intent behind that clear language, and it should not read something into the statute that is not readily found in its words. *Schmidt v. Trademark, Inc.*, 315 Kan. 196, 200, 506 P.3d 267 (2022). Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. *In re Joint Application of Westar Energy & Kansas Gas and Electric Co.*, 311 Kan. 320, 328, 460 P.3d 821 (2020).

*The district court misinterpreted the pre-amended version of DDKS's articles to require member approval of articles amendments.*

As mentioned, the phrase in Article V of DDKS's articles that the district court relied on to support its conclusion that members must approve articles amendments was added in 2000 when DDKS amended and restated its articles. One of the changes adopted at that time was the consolidation of two paragraphs from the prior version of the articles into one paragraph. Before they were amended, Articles IV and V of DDKS's articles stated:

> "FOURTH: This corporation shall not have authority to issue capital stock.
> . . . .
> "The business of the corporation shall be managed and all affairs shall be conducted at all times in accordance with the provision of 'the Nonprofit Dental Service Corporation Act', including any subsequent amendments thereto.
> "FIFTH: The conditions of membership are: The membership shall be comprised of the dentists who have executed participating agreements with the corporation as provided in 'the Nonprofit Dental Service Corporation Act'. Each member shall be entitled, at every meeting of members, to one vote per person, but no member shall be entitled to vote by proxy."

After the amendments, Articles IV and V were combined into one article—Article V— which stated:

17

"V. Membership Organization

"This Corporation shall not have authority to issue capital stock, and all voting powers normally vested in stockholders shall be vested in the members of this Corporation. The membership of this Corporation shall be comprised of the dentists who have currently executed participating agreements with the corporation as provided in the Act. Each member shall be entitled, at every meeting of the members, to one vote per person, but no member shall be entitled to vote by proxy."

The district court concluded that, by giving DDKS's members "all voting powers normally vested in stockholders," that meant DDKS members must approve articles amendments.

We read Article V differently. The general language added in 2000 is just that: general language. It does not specify that members shall have the power to adopt articles amendments and the court's reading is inconsistent both with other language in Article V and other articles.

Courts are to interpret corporate instruments like contracts. See *Kansas Heart Hospital*, 286 Kan. at 204. So we must harmonize their language rather than interpreting it in a way that renders it absurd or in conflict with other provisions of the articles. See *Becher v. United Healthcare Services, Inc.*, 374 F. Supp. 3d 1102, 1113 (D. Kan. 2019).

Yet the district court's interpretation of Article V's provisions renders them internally inconsistent. While the district court focuses on the phrase, "all voting powers normally vested in stockholders shall be vested in the members of this Corporation," the full sentence at issue reads, "This Corporation shall not have authority to issue capital stock, and all voting powers normally vested in stockholders shall be vested in the members of this Corporation." Read in context, we interpret this sentence to mean that since DDKS is a nonstock corporation, it has members instead of stockholders. And, as such, voting powers are held by members instead of stockholders. If we interpret the

18

phrase as the district court did, then we must ignore the part of the sentence reiterating that DDKS is a nonstock corporation.

The court's interpretation of Article V is also inconsistent with how member voting rights are addressed in other articles. For instance, DDKS's members are given the express right to vote on DDKS's bylaws in Article VII. It makes little sense to grant the members specific voting powers in one article but then grant them general voting powers in Article V. Why specify the issues DDKS's members can vote on in one article but then generically empower the members to vote on any number of issues in Article V? Or why specify that members can vote on bylaw amendments but not specify that they can vote on articles amendments?

We also note the parties' course of performance reflects that even they did not interpret Article V to empower DDKS's members to vote on articles amendments. Every time DDKS's articles were amended after the phrasing at issue was added in 2000, DDKS's board voted on the amendments, not DDKS's members. For example, in 2002, DDKS's board amended DDKS's articles to change DDKS's resident agent without a member vote. In 2005, DDKS's board amended DDKS's articles to change the corporate name without a member vote. Then DDKS's members amended DDKS's bylaws in 2005 to reflect the name change. And in 2007, DDKS's board amended the articles to change DDKS's resident agent again without a member vote. The record does not reflect that DDKS's members had any involvement in these articles' amendments, or that they raised any issue with DDKS's board's unilateral actions.

*The district court's interpretation of Article V does not align with the Code's requirements.*

The district court relied on various provisions of the Code to support its interpretation of Article V and its determination that the 2020 Board Amendments were

illegal because they were not approved by DDKS's members. But the district court, while well-intentioned, misread the Code. Another reason why DDKS's articles amendments did not require member approval is because DDKS's articles do not comply with the Code's requirements for giving members this power.

The Code covers the formation of corporations in Kansas. And K.S.A. 17-6002 addresses the contents of articles of incorporation, including voting powers. For example, regarding members and voting, K.S.A. 17-6002(a)(4)(B)(ii) states:

> "Nonstock corporations may provide for classes or groups of members having relative rights, powers and duties, and may make provision for the future creation of additional classes or groups of members having such relative rights, powers and duties as may from time to time be established, including rights, powers and duties senior to existing classes and groups of members. Except as otherwise provided in this code, nonstock corporations may also provide that any member or class or group of members shall have full, limited or no voting rights or powers, including that any member or class or group of members shall have the right to vote on a specified transaction even if that member or class or group of members does not have the right to vote for the election of the members of the governing body of the corporation. Voting by members of a nonstock corporation may be on a per capita, number, financial interest, class, group or any other basis set forth."

According to K.S.A. 17-6002(a)(4)(B)(iii), "[t]he provisions referred to in paragraph (4)(B)(ii) may be set forth in the articles of incorporation or bylaws."

The district court supported its reading of Article V as requiring member approval of articles amendments by interpreting K.S.A. 17-6002(a)(4)(B)(ii) and (iii) to mean a nonstock corporation can give members voting powers, including the power to vote on amendments to bylaws and articles. While we read these provisions the same way, we do not attribute the same importance to them that the district court did. And, in fact, we find

20

the district court improperly discounted other provisions in the Code when reaching its decision.

Later in the Code, K.S.A. 17-6602 addresses amending articles of incorporation. K.S.A. 17-6602(a) allows for a corporation to amend its articles of incorporation

"from time to time, in any and as many respects as may be desired, so long as its articles of incorporation, as amended, would contain only such provisions as it would be lawful and proper to insert in an original articles of incorporation filed at the time of the filing of the amendment."

K.S.A. 17-6602(b) specifies the way articles amendments "shall be made and effected." As for nonstock corporations, like DDKS, it provides:

"If the corporation is a nonstock corporation, then the governing body of the corporation shall adopt a resolution setting forth the amendment proposed and declaring its advisability. If a majority of all the members of the governing body shall vote in favor of such amendment, a certificate thereof shall be executed and filed, and shall become effective, in accordance with K.S.A. 17-7908 through 17-7911, and amendments thereto. The articles of incorporation of any nonstock corporation may contain a provision requiring any amendment thereto to be approved by a specified number or percentage of the members or of any specified class of members of such corporation in which event such proposed amendment shall be submitted to the members or to any specified class of members of such corporation in the same manner, so far as applicable, as is provided in this section for an amendment to the articles of incorporation of a stock corporation. In the event of the adoption of such amendment, a certificate evidencing such amendment shall be executed and filed and shall become effective in accordance with K.S.A. 17-7908 through 17-7911, and amendments thereto." K.S.A. 17-6602(b)(3).

The district court characterized K.S.A. 17-6602(b)(3) as containing "default provisions." Meaning, unless the articles require member approval of articles amendments, then articles amendments are approved by a majority of the nonstock

21

corporation's governing body—here the DDKS board—and do not require member approval. We agree.

But where we part ways with the district court is whether, when corporate articles require member approval of articles amendments, they must follow the provision set forth in K.S.A. 17-6602(b)(3). The district court framed the question in a way that established artificial and unnecessary tension between K.S.A. 17-6002(a) and K.S.A. 17-6602(b)(3). It asked "can a board of a nonstock corporation, pursuant to 17-6002(a) give members powers that are not given to members in K.S.A. 17-6602(b)(3)?" But since courts are obligated to interpret statutes in harmony, and specific provisions control over general ones, this was the wrong question to ask. See *State v. Strong*, 317 Kan. 197, 203, 527 P.3d 548 (2023) (appellate courts should consider various provisions of an act *in pari materia*).

K.S.A. 17-6602(b)(3) states corporate articles "may" contain a provision requiring member approval of amendments. This is consistent with K.S.A. 17-6002(a)(4)(B)(ii)'s language which provides that nonstock corporations "may" provide any member or class or group of members with voting rights or powers. But K.S.A. 17-6602(b)(3) then goes on to specify how those voting rights or powers must be outlined and exercised for articles amendments authorized by K.S.A. 17-6602(a).

We see no conflict or tension between K.S.A. 17-6002(a) and K.S.A. 17-6602(b)(3). Rather, we read K.S.A. 17-6002(a) to generally authorize a nonstock corporation to give members voting powers, which could include the right to vote on amendments to corporate articles. And we read K.S.A. 17-6602(b)(3) to set forth the specific procedures for giving members the right to vote on amendments to corporate articles.

22

K.S.A. 17-6602(b)(3) states that the articles of any nonstock corporation "may contain a provision requiring any amendment thereto to be approved by a specified number or percentage of the members or of any specified class of members of such corporation." We interpret K.S.A. 17-6602(b)(3) to allow member approval of articles amendments, but only under the circumstances set forth in K.S.A. 17-6602(b)(3). To find otherwise would render the language specifying options for member approval procedures in K.S.A. 17-6602(b)(3) meaningless or mere surplusage. Yet we are prevented from interpreting statutes in this way. See *State v. Eckert*, 317 Kan. 21, Syl. ¶ 8, 522 P.3d 796 (2023) ("Courts must construe a statute to avoid unreasonable or absurd results."); *Jarvis v. Kansas Dept. of Revenue*, 312 Kan. 156, 165, 473 P.3d 869 (2020) ("[C]ourts construing statutes presume the Legislature does not intend to enact meaningless legislation.").

Just because DDKS *could* have given members the power to approve DDKS's articles amendments does not mean the generic language in Article V did so. If DDKS wanted to require member approval of articles amendments, DDKS's articles would need to contain a provision requiring any articles amendments to be approved by a specified number or percentage of DDKS's members or of any specified class of DDKS's members to comply with the Code. DDKS's articles do not contain this language. The phrase in Article V that the district court relied on cannot, by statute, convey this power to the members.

To support its interpretation of the phrase in Article V, the district court also relied on another part of the Code—K.S.A. 17-6605—addressing restated articles. But K.S.A. 17-6605 does not address member approval of articles amendments. It addresses procedures for when a corporation restates its articles or integrates several articles on file with the Secretary of State into one document. K.S.A. 17-6605(a). K.S.A. 17-6605(b) recognizes a distinction between the procedures that govern adopting restated or integrated articles which do not also amend the articles and the procedures that govern

23

adopting restated or integrated articles which also amend the articles. If the articles are not also amended, they may be adopted by the corporation's board without a vote of the stockholders or they may be proposed by the directors and submitted to the stockholders for adoption. If they are submitted to the stockholders, then the procedures for submitting amended articles to the stockholders set forth in K.S.A. 17-6602 apply. K.S.A. 17-6605(b). And if the articles are also amended, "they shall be proposed by the directors and adopted by the stockholders in the manner and by the vote prescribed by K.S.A. 17-6602, and amendments thereto." K.S.A. 17-6605(b). The district court interpreted this provision to support its finding that K.S.A. 17-6605 "allows the articles to include a provision that provides for the right of members to approve any amendments to the articles." But we do not read this provision the same way. K.S.A. 17-6605(b) incorporates the procedures for proposing articles amendments to stockholders—when such procedures are required—it does not empower members to approve articles amendments nor does it alter or modify the requirements in K.S.A. 17-6602(b) which govern the manner in which "[e]very" articles amendment "shall be made and effected."

As noted, K.S.A. 17-6602(b)(3) empowers the "majority of all the members of the governing body" of a nonstock corporation to vote to approve articles amendments. But it also includes a provision setting forth procedures for members of a nonstock corporation to approve articles amendments. If such a provision is included in a nonstock corporation's articles, then proposed articles amendments "shall be submitted to the members or to any specified class of members of such corporation in the same manner, so far as applicable, as is provided in this section for an amendment to the articles of incorporation of a stock corporation." K.S.A. 17-6602(b)(3). But here, as explained, no such provision was included in DDKS's pre-amended version of its articles, so K.S.A. 17-6602(b)(1) and (b)(2) are inapplicable.

The district court interpreted the language in K.S.A. 17-6605(b) that requires restated or integrated articles which also amend those articles to "be proposed by the

24

directors and adopted by the stockholders in the manner and by the vote prescribed by K.S.A. 17-6602" to mean that DDKS's members must approve articles amendments since they were given "all voting powers normally vested in stockholders." But that interpretation takes K.S.A. 17-6605(b) out of context and ignores the requirements of K.S.A. 17-6602.

Since we find DDKS's articles do not require member approval of articles amendments, we find the court erred when it determined the 2020 Board Amendments were void because DDKS's board and not DDKS's members adopted them. We therefore reverse its summary judgment decision for plaintiffs on count I, for declaratory judgment, wherein it found the 2020 Board Amendments were illegal.

We pause to note that this decision is limited to the district court's determination that the 2020 Board Amendments were illegal because they required member approval. Plaintiffs also claimed DDKS's board acted outside of its authority when it amended DDKS's bylaws in 2020 for another reason: because the amendments did not comply with notice requirements.

The 2020 Board Amendments included an amendment to DDKS's articles which gave DDKS's board concurrent powers with DDKS's members to adopt, amend, or alter DDKS's bylaws. And after amending DDKS's articles, DDKS's board used this concurrent power to amend DDKS's bylaws. In addressing plaintiffs' claim for declaratory judgment, the district court determined that DDKS's board did not have authority to amend DDKS's bylaws since the court found it did not have the authority to amend DDKS's articles. That is, since DDKS's board's power to amend DDKS's bylaws came from the 2020 Board Amendments, which the district court found were void, then the court found DDKS's board could not amend DDKS's bylaws.

But plaintiffs also asserted DDKS's board amended the bylaws with insufficient notice. Before DDKS's board used its newly minted power to amend DDKS's bylaws, those bylaws contained provisions regarding timing and procedures for amending bylaws. And before the 2020 Board Amendments, DDKS's members had the sole authority to amend DDKS's bylaws.

During the August 10, 2019 annual members' meeting, the membership voted to amend DDKS's bylaws to adjust the procedure and timelines for amending the bylaws. For instance, the members voted to amend the bylaws to include notice requirements for proposed bylaw amendments and a requirement that the rationale for the proposed amendment be submitted in writing to all DDKS's members.

Since the district court found DDKS's board had no power to amend DDKS's bylaws, it did not reach a decision on plaintiffs' claims about whether the procedures used to amend the bylaws—outside of who had the power to amend the bylaws—were violated. Therefore, these claims remain to be addressed on remand.

III. *Did the district court err in, alternatively, granting equitable relief by enjoining enforcement of the 2020 Board Amendments despite finding DDKS's directors did not breach any fiduciary duties in enacting those amendments?*

When it ordered summary judgment on count I in favor of plaintiffs, the district court found the 2020 Board Amendments were ultra vires as a matter of law and therefore void. Plaintiffs essentially sought the same relief in count II, but through an alternative avenue. That is, they asked the court to find that DDKS's directors breached their fiduciary duties when enacting the 2020 Board Amendments and then asked the court to exercise its equitable powers to enjoin DDKS and its directors from enforcing the 2020 Board Amendments. Even though count II was pled in the alternative, the district

26

court determined that it still needed to rule on count II if its summary judgment decision on count I was reversed on appeal.

After dismissing the elected directors on summary judgment once it determined they breached no fiduciary duties, the district court held a bench trial on stipulated facts on count II, against the appointed directors. The court found the appointed directors did not violate any fiduciary duties. Even so, it found the 2020 Board Amendments were "inequitable in the procedures the Board used to pass them and in their substance." It thus ordered DDKS to file the pre-amended version of DDKS's articles and bylaws with the Kansas Insurance Commissioner.

On appeal, the appointed directors contend the district court erred first by granting equitable relief after finding they did not violate their fiduciary duties and again by not applying the more deferential business judgment rule to plaintiffs' equitable claim and then not deferring to the appointed directors' judgment in adopting the 2020 Board Amendments.

*Standard of Review and Relevant Legal Framework*

The appointed directors' appeal from the district court's award of equitable relief on count II challenges the district court's legal authority to issue equitable relief after finding DDKS's directors breached no fiduciary duties. While the granting of an injunction is equitable in nature and usually involves the exercise of judicial discretion, review of whether the threshold legal requirements for injunctive relief in a specific case were met involves legal issues, so a de novo standard of review applies. See *Friess v. Quest Cherokee*, 42 Kan. App. 2d 60, 63-64, 209 P.3d 722 (2009).

We also note Kansas courts generally do not allow equitable remedies when there is an adequate remedy at law. Under this principle, a claim must first be made against the

27

one who violated a duty, and a remedy at law must be unavailable before equitable relief is allowed. *Nelson v. Nelson*, 288 Kan. 570, 597, 205 P.3d 715 (2009).

> *Plaintiffs fail to establish they are entitled to equitable relief against the appointed directors after the district court found the appointed directors breached no fiduciary duties.*

The appointed directors contend the district court erred in awarding equitable relief to plaintiffs after finding the appointed directors violated no fiduciary duties. They submit that the equity tests plaintiffs and the court relied on still require a plaintiff to prove a breach of fiduciary duty.

Plaintiffs, on the other hand, assert that count II was an "equity" claim under Delaware's "'twice-tested'" process and not a claim for breach of fiduciary duty. They claim they are invoking the court's "equity jurisdiction" to restore the former version of DDKS's articles and bylaws.

The first problem with plaintiffs' argument is that it is belied by their pleadings and arguments to the district court. In both their original and amended petition, plaintiffs labeled count I of their petition as one for declaratory judgment and count II as one for breach of fiduciary duty. And in their briefing to the district court, plaintiffs asked the court to apply Delaware's "twice-tested" process, which they described as a two-part test whereby a court looks first at whether the 2020 Board Amendments were legally permissible and then examines whether they were inequitable based on rules analogous to the rules governing fiduciaries. Before the district court, plaintiffs characterized their petition and verified petition as asserting claims under each part of this test: They claimed count I was a legal challenge under the first part of the test and count II was an equitable challenge "based on principles of fiduciary duty" that falls under the second part of the test. And they told the district court that this "two-part test is disjunctive, meaning that if the first part is satisfied, the Court need not consider the second part."

28

We have found the "first part" of Delaware's twice-tested process has been satisfied, at least with respect to DDKS's board's amendment of DDKS's articles, since DDKS's directors had the authority to amend the articles without member approval. So, as plaintiffs admit, we need not consider an equitable claim based on this action. And even assuming DDKS's board acted outside the procedures in DDKS's bylaws when they amended the bylaws in 2020 (which we offer no opinion on), the district court found DDKS's board acted outside its authority in enacting *all* the 2020 Board Amendments yet still found they did not breach their fiduciary duties. Plaintiffs offer no authority for a separate "equitable" claim apart from fiduciary duty principles after such a finding. Nor did they appeal the court's decision finding that the appointed directors breached no fiduciary duties to the members.

While the parties spend much of their briefs discussing which of the several tests that Delaware courts have developed to judge directors' actions should apply here, these tests are all designed to determine whether directors have remained true to their fiduciary duties or have acted outside their powers. Siegel, *The Illusion of Enhanced Review of Board Actions*, 15 U. Pa. J. Bus. L. 599, 607-08 (2013) (noting courts defer to directors' business judgment if plaintiffs cannot make a prima facie showing that the board breached its fiduciary duties and the other Delaware tests apply only if a plaintiff has made such a showing or if the court believes the board has transcended its powers). The Delaware tests provide standards to judge whether directors breached their fiduciary duties and assign the burden of proving the same. See *Firefighters' Pension System of City of Kansas City, Missouri Trust v. Presidio, Inc.*, 251 A.3d 212, 252-54 (Del. Ch. 2021).

For example, one of these tests, which has been adopted in Kansas, is called the "business judgment" rule. This rule has been described as follows:

"The business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.' The burden is on plaintiffs, the party challenging the directors' decision, to rebut this presumption. Thus, absent an allegation of interestedness or disloyalty to the corporation, the business judgment rule prevents a judge or jury from second guessing director decisions if they were the product of a rational process and the directors availed themselves of all material and reasonably available information. The standard of director liability under the business judgment rule 'is predicated upon concepts of gross negligence.'" *In re Citigroup Inc. Shareholder Derivative Litigation*, 964 A.2d 106, 124 (Del. Ch. 2009).

In other words, this rule is simply a rebuttable presumption that directors did not breach their fiduciary duties—it is not applied to determine a separate "equitable" claim apart from a claim for breach of fiduciary duties.

Similarly, when it appears a board was acting under a conflict of interest, Delaware courts employ an "enhanced business judgment rule" or "enhanced scrutiny" test, adopted in *Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946 (Del. 1985), *holding modified by Coster v. UIP Companies, Inc.*, 300 A.3d 656 (Del. 2023). This test shifts the burden to the board to show it acted in good faith and after reasonable investigation. Siegel, *The Illusion of Enhanced Review of Board Actions*, 15 U. Pa. J. Bus. L. at 600; see *Unocal Corp.*, 493 A.2d at 955. Again, this rule or test is not applied to determine a separate "equitable" claim, it simply shifts the burden of proof in a breach of fiduciary duty claim to the directors to show they did not breach their duties. And, in fact, our Supreme Court discussed and applied the "enhanced scrutiny" test—the one which plaintiffs advocate for here—to a breach of fiduciary duty claim in *Burcham v. Unison Bancorp, Inc.*, 276 Kan. 393, 396, 418, 422, 77 P.3d 130 (2003).

To support their contention that they have made a claim in "equity" and not for breach of fiduciary duty, plaintiffs ask us to focus on the remedy they seek. That is, they

argue that since they are seeking an injunction against enforcement of the 2020 Board Amendments instead of monetary damages from any DDKS director, this means they have asserted a "transactional" equity claim rather than one based on personal liability of any DDKS director. But the case they rely on, *Presidio, Inc.*, does not make that distinction. Although the Delaware court recognized the difference between "'the transactional justification setting'" and "'the personal liability setting'" in that case, it explained that this distinction only impacts the remedy available. 251 A.3d at 251.

*Presidio, Inc.*, does not stand for plaintiffs' proposition that they can assert an equity claim against DDKS's board when it is not based on breach of fiduciary duty. Instead, it simply explains that more exacting pleading requirements apply to claims against individual DDKS directors for monetary damages than to claims against DDKS's directors for a "transactional" remedy, like the injunction plaintiffs sought here.

In *Presidio, Inc.*, the Delaware court described the various corporate action tests as simply the "standard of review" for evaluating corporate decisions. It recited how, when applying the more exacting "enhanced scrutiny" standard of review, a plaintiff "can state a claim for breach of duty by pleading facts supporting a reasonable inference" that the corporate action at issue "fell outside the range of reasonableness." 251 A.3d at 254. But it noted that pleading a viable claim for damages against a fiduciary defendant requires more specifics. For example, "[t]o plead a loyalty-based damages claim, the plaintiff must plead facts supporting a reasonable inference that the defendant failed to act reasonably to obtain the best transaction reasonably available, either due to interestedness, because of a lack of independence, or in bad faith." 251 A.3d at 254. The court did not recognize a separate equity claim which is not dependent on establishing a breach of fiduciary duty or one that could be maintained if no such breach was established.

31

Another problem with plaintiffs' contention is the district court's motivation for awarding an equitable remedy was based on its finding that the 2020 Board Amendments were illegal. In explaining its decision, the district court relied heavily on its determination that DDKS's board acted in violation of DDKS's articles when passing the 2020 Board Amendments by not getting member approval:

> "[T]he Court holds that whether it is an equitable relief or legal relief, the Court has the power to order the board to undo what the Court has held should not have been done.
> "It does not make sense for this Court to hold the board's actions were illegal and they improperly removed the member dentists' corporate powers, but then say the Court does not have the power to restore the status quo. So if this Court does not have the power to return the DDKS corporate powers to the previous to status quo, there's really ultimately no downside to a board's illegal or improper actions."

But we found DDKS's board did not act outside its authority in amending DDKS's articles without member approval. Therefore, the district court was mistaken when it found DDKS's board's action was a "wrong" that required correcting, which at least undercuts if not eliminates the purpose for its award of equitable relief.

*Plaintiffs fail to establish the district court erred in finding the elected directors breached no fiduciary duties.*

While plaintiffs did not appeal the district court's ruling that the appointed directors breached their fiduciary duties, they filed a contingent cross-appeal challenging the district court's summary judgment finding that the elected directors did not breach their fiduciary duties. We apply the same summary judgment standard of review we applied to DDKS's and appointed directors' appeal of the district court's award of summary judgment to plaintiffs on count I to this cross-appeal.

The district court granted the elected directors' cross-motion for summary judgment and dismissed them from the case after finding they breached no fiduciary duties since they voted against the 2020 Board Amendments. Like their arguments on appeal regarding count II, plaintiffs claim the district court erred because they did not sue the elected directors for personal liability in tort. Instead, they sought coercive relief against the directors as a group. They sued all DDKS's directors to enjoin them from enforcing the 2020 Board Amendments or from holding a member vote to ratify the 2020 amendments and bylaws "without full disclosure of all material information as detailed in this Verified Petition."

Plaintiffs do not address the district court's reasoning for why it found the elected directors did not breach any fiduciary duty, nor do they explain how the elected directors breached any such duty. And while they alleged below that all the directors breached a fiduciary duty, on appeal they simply reference their previously addressed contentions that they do not have to prove a fiduciary duty breach to receive the equitable relief the court ordered. But, as just explained, plaintiffs have provided no legal authority to support a claim in equity separate from a breach of fiduciary duty claim. And they also do not explain how the elected directors—who voted against the 2020 Board Amendments—acted inequitably. We therefore find plaintiffs have failed to show the district court erred in granting summary judgment to the elected directors and dismissing them from the case.

For these reasons, as well as the reasons we reversed the district court's declaratory judgment decision, we also reverse the district court's order granting plaintiffs equitable relief in the form of an injunction against enforcement of the 2020 Board Amendments. Under these circumstances, plaintiffs have no separate claim in equity to achieve relief to which they are not entitled under the law.

CONCLUSION

All in all, we find the district court erred in finding the pre-amended DDKS's articles required member approval of article amendments and in awarding equitable relief after finding the DDKS's directors breached no fiduciary duties. But we remand the case for consideration of plaintiffs' claims regarding the substance of the 2020 Board Amendments and the legality of the 2020 bylaw amendments (apart from any issue involving DDKS's board's authority to approve DDKS's articles amendments).

We have considered and deny plaintiffs' motion for an extension of time to file a motion for attorney fees on appeal.

Reversed and remanded with directions.